AMERICAN EXPRESS CO. *v.* UNITED STATES (No. 870).[1]

1. GELATIN IN "SHEETS."

To determine what is a "sheet" in a given case, the particular facts of that case are to be considered; and the facts here showing the merchandise to be edible gelatin with irregular edges and uneven surfaces do not make it clear that the article is properly classifiable as sheets of gelatin. The doubt must be resolved in favor of the importer and the goods are dutiable as gelatin under paragraph 23, tariff act of 1909.

2. BOARD'S FINDING.

The board's finding of facts will not be disturbed unless clearly contrary to or unsupported by the weight of evidence; but here the finding that the gelatin was in sheets was based on an erroneous construction of the law itself and so does not fall within the rule.

United States Court of Customs Appeals, January 20, 1913.

APPEAL from Board of United States General Appraisers, G. A. 7320 (T. D. 32223).

[Reversed.]

*Comstock & Washburn* for appellant.

*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel; *Charles D. Lawrence,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise in this case is gelatin. It was assessed by the collector, and the Government here claims it to be dutiable as "gelatin in sheets," at 35 per cent ad valorem under the last clause but one of paragraph 23 of the tariff act of 1909, while the importer contends that it is dutiable at 25 per cent ad valorem as "gelatin" under the first two clauses in said paragraph. There is no dispute as to the value of the merchandise.

The paragraph reads as follows:

23. Gelatin, glue, isinglass or fish glue, including agar-agar or Japanese isinglass, and all fish bladders and fish sounds other than crude or dried or salted for preservation only, valued at not above ten cents per pound, two and one-half cents per pound; valued at above ten cents per pound and not above thirty-five cents per pound, twenty-five per centum ad valorem; valued above thirty-five cents per pound, fifteen cents per pound and twenty per centum ad valorem; gelatin in sheets, emulsions, and all manufactures of gelatin, or of which gelatin is the component material of chief value, not specially provided for in this section, thirty-five per centum ad valorem; glue size, twenty-five per centum ad valorem.

The majority opinion of the Board of General Appraisers affirmed the assessment of the collector, one member thereof dissenting.

Counsel upon both sides proceed upon the theory that, although evidence as to commercial or trade designation was introduced before the board, there is here no such issue, and we so treat the case.

It is established that this gelatin is edible and that edible gelatin is in various forms, as ground, flaked, shredded, or in the form of this importation, and possibly in other forms.

As we understand from the record, the form the gelatin assumes in this importation is the highest priced edible gelatin on the market and that it is somewhat more expensive to produce than in the specified edible forms.

The importation is in thin pieces, practically transparent, about 8 inches long and 3 inches wide; the edges are irregular and uneven and the surfaces have thereon dents or depressions on one side accompanied by corresponding elevations or protuberances on the other, and are marked with practically straight intersecting lines crossing the entire piece, at angles, obtuse at one edge and acute at the other, to the general line of the sides of the strips, which results that each surface presents a diamond-like figured appearance. The dents and depressions are generally found at the intersection of these cross lines and result in a surface that is not smooth, regular, or entirely flat. The record suggests that this surface condition serves no purpose in the use of the gelatin, but is the result of the appliances used in making these pieces from larger bodies thereof. It appears that the chief and perhaps the only use made of gelatin in this form is for food purposes.

The issue narrows down to this, Does the term "gelatin in sheets," as used in the paragraph, in the common meaning or understanding thereof, fairly describe the merchandise here? If so, the contention must be settled in favor of the Government; if not so, the importer must prevail.

The Government, among other things, cites the following definitions of the word "sheet":

Century Dictionary:

In general, a broad, usually flat, and relatively thin piece of anything, * * *. (Sheet is often used in composition to denote that the substance to the name of which it is prefixed is in the form of sheets or thin plates; as, sheet-iron, sheet-glass, sheet-tin).

Standard Dictionary:

A very thin and broad piece of any substance; * * *. A piece of metal or other substance, hammered, rolled, fused or cut very thin; as a sheet of tin, a sheet of glass, a sheet of veneer.

And it avers that the merchandise involved here "corresponds exactly with the above definitions," while the importer, with equal positiveness, asserts to the contrary, and says, among other things, that it is more appropriately designated as *strips* than *sheets*, as these terms are commonly understood.

The high authority of the lexicographers above cited gives force to the meaning of words as stated by them, but we are unable to go so far as the Government contends and say that the official exhibits here "correspond exactly" with the above-quoted definitions. Moreover, we have much doubt if in the common acceptation of the term these pieces of gelatin would be generally referred to as sheets

of that substance, although we realize that this may be a close question. The size of the pieces, we think, is hardly that which would be required to constitute a sheet when composed of this substance. The Standard Dictionary, in connection with the definition above quoted, further defines a sheet as—

Anything having considerable expanse with very little thickness.

We also notice that Webster defines "sheet" generally as—

A large, broad piece of anything comparatively thin, as paper, cloth, etc.; a broad, thin portion of any substance.

We think these definitions suggest to the ordinary mind a breadth of sheet greater than that of the alleged sheets here.

Our conception of the meaning of the word "sheet" of anything, as generally understood, would be, in the first instance, somewhat varied according to the nature, value, and use of the material of which the alleged sheets were composed. For instance, it is very likely that an article might properly be referred to as a sheet of gold which was of less size than a sheet of tin or iron or a sheet of cloth or paper, and we do not undertake to fix the size above which an article, if it otherwise conforms to the definition of a sheet, is such, and below which it is not.

It is doubtful if, generally speaking of most commodities, pieces of the size shown here, assumed in other respects to possess the characteristics of sheets, really rise to that dignity, although, as suggested, it is manifest that when length and breadth only are considered, other requisites being assumed, it may not be easy to fix with certainty any dividing line between what are and are not sheets. Each case must stand upon its own particular facts.

We think, too, that the irregular edges and uneven surfaces of these pieces of gelatin make against rather than in favor of their being described in common speech by the word "sheets."

The means by which sheets of anything are produced, so far as relates to metal at least, as given in the Standard Dictionary, namely, hammering, rolling, fusing, or cutting very thin, would suggest that the edges and more especially the surfaces of the sheets so produced would be more regular and uniform than are the pieces of gelatin here involved, and we think, as commonly understood, a sheet of anything ordinarily presupposes a smoother and more even surface than the official exhibits here possess.

There is another view of this case which makes in favor of the importer's contention. It appears that under the prior tariff act this particular kind of merchandise was passed as gelatin under the applicable paragraph corresponding to the one under which the importer now claims, and there was at that time no specific provision for gelatin in sheets.

In T. D. 25236, decided in 1904, the Board of General Appraisers had before them what was claimed to be gelatin in sheets, which were very much larger than the official exhibits here and apparently considerably thinner, that were made from ordinary gelatin combined with formaldehyde and other substances. The importers there contended that the merchandise was not gelatin, but was dutiable as a manufacture of gelatin under paragraph 450 of the tariff act of 1897, which specifically referred to manufactures of that substance.

In a carefully considered opinion the board found that those gelatin sheets were as claimed by the importers and not gelatin, as it had theretofore several times held. This resulted in overruling their previous decisions and in subjecting a manufacture composed very largely of gelatin to the lower duty of paragraph 450. The effect of this decision was called to the attention of Congress in Notes on Tariff Revision, prior to the enactment of the act of 1909, and it was there suggested that provision be made to correct the apparent inequitable results which followed upon the board's decision of assessing a rate of duty on manufactured articles of gelatin lower than the rate on the chief material of which they were made.

In paragraph 23 of the act of 1909 no change is made affecting the corresponding paragraph (23) of the act of 1897, so far as concerns the case here, except the addition thereto of the last two clauses.

A sample of this sheet gelatin or gelatin in sheets, whichever it may be called, is made an exhibit in this case and, from the record here and the opinion in T. D. 25236, we conclude it is very like if not identical with the merchandise passed upon by the board in that case. This sample is about 17 by 24 inches in size; it is thin and flat, but of uniform thickness; its sides are regular and even and the surfaces are smooth and uniform. It is produced by treating clear gelatin chemically with formaldehyde and other substances, manipulating the product, and, in the finished article, the chief value thereof is gelatin. It is and has been for many years a subject of commerce, can not be used for food purposes, and seems to satisfy the meaning of the term "gelatin in sheets" as used in the paragraph.

Although the legislative history, while the act of 1909 was under consideration, as it appears in the various reports of committees and in the different forms of the tariff bills in the House and Senate, affords some ground to believe, as claimed by the Government, that such history makes against the importer's contention, yet, on the whole, we think, considering the history of the entire subject matter, there is more reason to believe that Congress by the use of the term

"gelatin in sheets" in paragraph 23 was endeavoring to cure inequalities in the assessment of duties following upon said decision of the board, rather than to make an edible gelatin like the merchandise here subject to the higher rate of duty.

We have intimated this question is not altogether free of doubt, but we think the doubt is of such a character that it clearly comes within that class of cases where the doubt ought to be resolved in favor of the importer.

It is strenuously urged by the Government that, because the Board of General Appraisers has found as a fact that the merchandise is gelatin in sheets within the meaning of the paragraph, this finding should not be reversed as within the rule that a finding of fact will not be disturbed here unless clearly contrary to or unsupported by the weight of evidence. But this claimed finding rests upon the assumption that this merchandise answers to the call "in sheets" as that expression is used in the paragraph. We disagree with the board as to the ordinary meaning of the term "in sheets" as used therein, and hence it follows that this finding of the board, being based upon what we hold to be an erroneous conception of the law, is not within the rule.

The judgment of the Board of General Appraisers is *reversed.*