WRIGHT & GRAHAM Co. *v.* UNITED STATES (No. 1417).[1]

PARAGRAPH 627, TARIFF ACT OF 1913.

Reviewing the history of the legislation affecting containers, such as the immediate coverings of tea in this case, and the larger holders or boxes carrying the packages of tea, it is held that the larger containers used in the shipment and transportation of tea put up and imported in packages less than 5 pounds each should be taxed under paragraph 627, tariff act of 1913, but the immediate coverings or wrappers, constituting a part of the packages, are free of duty.

United States Court of Customs Appeals, November 27, 1914.

APPEAL from Board of United States General Appraisers, G. A. 7567 (T. D. 34467).

[Reversed.]

*McLaughlin, Russell, Coe & Sprague* (*Edmund P. Sharretts* of counsel) for appellant.
*Bert Hanson*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

Paragraph 627 of the tariff act of October 3, 1913, and which is one of the free list paragraphs of the act, contains the following:

Tea, not specially provided for in this section, and tea plants: *Provided*, That the cans, boxes, or other containers of tea packed in packages of less than five pounds each shall be dutiable at the rate chargeable thereon if imported empty; * * *.

Subject to these provisions, tea in packages of less than 5 pounds, that is, packages containing 1½ to 4 ounces of tea each, were imported. The immediate containers, holders, or coverings of the tea were either sheet lead, cardboard boxes, or boxes with cardboard sides and tin tops and bottoms. So constituted, these packages of tea were packed in larger tin boxes holding more than 5 pounds. These larger tin boxes are substantially made, are capable of being used and are used as containers after the package teas are removed therefrom, and according to the undisputed testimony of one witness are sometimes of more value than the packages of tea contained therein. When package teas are imported in these large tin boxes such boxes are covered with wooden boxes or crates.

The evidence shows that these cardboard or cardboard and tin boxes are of no appreciable value after the tea has been removed therefrom and generally are thrown away. It also tends to show that the lead covering is likewise of no value and if imported separately

---

would be in the form of sheets because of its physical inability to maintain the shape of a container unless filled. The tea, of course, was admitted free, but duty was assessed upon these immediate containers, holders, or coverings according to the appropriate rates therefor elsewhere provided in the act, and no duty was assessed upon the larger tin boxes in which the packages were imported. This assessment was sustained by the Board of General Appraisers.

The single question here is whether under the provisions of paragraph 627 duty was properly assessed upon these immediate containers, holders, or coverings.

The testimony of record shows that loose tea is imported in various kinds of containers, in quantities of more than 5 pounds, and that package teas seldom contain more than 1 pound of tea in a package and never more than 5 pounds.

Confessedly the language of the paragraph is not free from ambiguity. It provides for duty on some cans, boxes, or other containers of tea, but it is not clear whether such dutiable articles are the immediate containers or coverings of the tea, which with their contents constitute a package of tea, or are the larger cans, boxes, or containers in which such packages are placed prior to shipment and importation.

Prior to the tariff act of 1909, there had been considerable controversy between the Government and importers as to the dutiability of certain articles used as containers, generally of tea, which were often of such stable contsruction and of such ornamentation and value that it gave rise to the claim that, under the recognized rule that free goods meant free containers (tea not being dutiable), articles unusual in form or designed for uses other than in the bona fide transportation of merchandise were obtaining free entry into this country. T. D. 12564, T. D. 29801, T. D. 29369, Abstract 21393 (T. D. 29834).

During the consideration of the subject matter of the proposed tariff bill of 1909, representations were made on behalf of some manufacturers of tin boxes, cans, and containers that they were inadequately protected, and certain specific and ad volorem taxes on such articles were asked for. See Tariff Hearings, 1908–1909 (vol. 8, p. 8030).

The tariff act of August 5, 1909, contained the following paragraph:

195. Cans, boxes, packages, and other containers of all kinds (except such as are hermetically sealed by soldering or otherwise), composed wholly or in chief value of metal lacquered or printed by any process of lithography whatever, if filled or unfilled, and whether their contents be dutiable or free, four cents per pound and thirty-five per centum ad valorem: *Provided*, That none of the foregoing articles shall pay a less rate of duty than fifty-five per centum ad valorem; but no cans, boxes, packages, or containers of any kind, of the capacity of five pounds or under, subject to duty under this paragraph, shall pay less duty than if the same were imported empty; * * *: *Provided further*, That paper, cardboard or pasteboard wrappings or containers that are made and used only for the purpose of holding or containing the article with which

they are filled, and after such use are mere waste material, shall not be dutiable unless their contents are dutiable.

Much litigation arose under this paragraph, which seems to have been the first enactment of its kind, and there ensued rulings of the Treasury Department and many decisions of the Board of General Appraisers construing and applying it. Tea containers seem to have been a favorite subject of this litigation. T. D. 31072, Abstract 24965 (T. D. 31352), and Abstract 31364 (T. D. 33217) may be referred to. Many other decisions upon this much mooted question may be found by a reference to the subject of "tea coverings" in the indexes to the several volumes of the Treasury Decisions covering the period during which this paragraph was in force. These decisions, so far as reported in the Treasury Decisions, do not generally mention the capacity of the various containers under consideration, but indicate that relatively quite valuable containers were admitted to free entry either as usual containers or as being hermetically sealed.

This brings us to the tariff law of 1913, known as the Underwood Act.

The Ways and Means Committee gave hearings on tariff questions before the Underwood bill was introduced in the House and had in mind tariff information obtained by it in preceding years, as far back as prior to the tariff act of 1909. Its attention was also specifically called to litigation touching the subject of tea containers under paragraph 195. Claim was made to the committee that, as that paragraph had been construed and applied, tea merchants of the United States had been discriminated against, in that they could not profitably import loose tea and put up and sell the same in packages of less than 5 pounds in competition with importers of package teas of that weight, because of the greater cost of manufacturing the immediate containers or coverings of such teas in this country and the greater expense of labor in packing the tea therein. In that connection the committee was urged to omit paragraph 195 from the forthcoming bill and to substitute in lieu thereof a paragraph providing for duty upon "cans, boxes, packages, and other containers of imported tea of a capacity of 5 pounds or under, of whatever material composed," or as a paragraph not limited to tea containers the following: "Cans, boxes, packages, and other containers of imported merchandise of a capacity of 5 pounds or under, of whatever material composed."

On behalf, evidently, of certain importers of tea in packages the committee was urged to repeal altogether paragraph 195, and in support of this contention it was said that its operation had been highly discriminatory and unjust; that all the legislation relating to containers of imported merchandise that was fairly required was to be found in subsection 18 of section 28 of the act of 1909, which in passing, it may be noted, is practically identical with sub-

section R of section 3 of the act of 1913. The provisions referred to in these statutes are, in substance, that any unusual article or form of covering or container (whether of free or dutiable merchandise), if designed for use otherwise than in the bona fide transportation of such merchandise, shall be dutiable at the rate to which it would be subjected if separately imported. It was also claimed that to retain or place a duty on containers of food products would necessarily raise the price to the consumer or deprive him of a suitable container in which to keep or preserve the same until used; that such a duty, so far as it related to the immediate containers of package teas, would not benefit the consumer, but would enable the American tea packer to charge more for such teas; and finally that under the provisions of the act of 1909 the domestic can was the cheapest in the American market and controlled it.

Other interests urged the committee to impose a small duty on all imported teas and also "an additional duty of 5 cents per pound on all teas imported into the United States packed in any description of container containing less than 5 pounds." It was represented that a small duty on all imported teas in packages of 5 pounds or under would allow tea packers in America to compete with foreign-packed teas.

As introduced into the House, the Underwood tariff bill contained the following free-entry paragraph:

630. Tea and tea plants: *Provided*, That cans, boxes, or other containers of tea packed in packages of less than 5 pounds each shall be dutiable at the rate chargeable thereon if imported empty. * * *

When this bill came to the Senate some of the considerations hereinbefore mentioned were presented to the Subcommittee on Finance and it was urged that the first line of this paragraph be amended to read, "tea imported direct from the country of origin and tea plants," etc., leaving the remainder of the paragraph unchanged.

The proceedings from which this resumé is made may be found in the report of the Ways and Means Committee to the first session of the Sixty-third Congress, accompanying H. R. 3321, at page II, and pages 1909 *et seq.* of volume 2, and page 6047 of volume 6 of the Hearings on Tariff Schedules before the Ways and Means Committee of the Sixty-second Congress, and at pages 315 *et seq.* of the volume embodying the Report on Tariff Hearings before the Subcommittee on Finance of the Senate to the same Congress.

These proceedings show, what doubtless would be presumed were they not referred to, that Congress and its committees had proper cognizance of the history of the whole subject matter, knew the various reasons for the repeal of paragraph 195 of the act of 1909, and the divergent claims of persons interested in the action to be taken with reference to tea and the containers thereof, whether in

package form or otherwise. No general substitute for paragraph 195 appears in the Underwood Act.

As to the actual purpose or intent of Congress in the enactment of paragraph 627 we know nothing except what the language thereof imports. This is to be construed, however, in the light of the history of the subject of tea containers hereinbefore set forth and what has been outlined as to the congressional proceedings touching the paragraph itself.

As enacted it is susceptible either of the construction claimed by the Government, namely, that the immediate wrappings or containers of less than 5 pounds of tea are dutiable, or of that of the importers, which is that thereunder duty is to be levied only upon the larger containers of *packages* of tea of less than 5 pounds, the immediate containers or coverings of which are free. And it is not entirely clear, considering alone the language of the paragraph, that it might not be understood to impose a duty upon both classes of these containers or coverings, although in view of what has already appeared we do not now consider this construction to be tenable.

As we have said, the immediate containers or coverings involved in this case have a capacity of, or in fact contain, from $1\frac{1}{2}$ to 4 ounces of tea each. They are not expensive, are not especially durable or substantial in their construction, and after the contents have been consumed are of no value as articles of merchandise, although the boxes may have some further use as containers. The larger tin boxes have a capacity of more than 5 pounds, are substantial in construction, durable, have considerable value, and manifestly are capable of being used as containers long after the teas imported therein have ordinarily been consumed.

It must be confessed that at first blush it seems much more probable that Congress would naturally undertake to levy a duty upon the latter rather than the former. This natural probability is strengthened by the fact that apt language to effect the Government's contention was, as already appears, submitted to the Ways and Means Committee and rejected by it. Further support for this view is found in the fact that when legislating with respect to packages somewhat similar to these packages of tea, Congress has, when some special regard was to be had to the immediate coverings thereof, used the word "immediate" when referring thereto. See paragraphs 180, 199, 203, 209, 228, and 229 of the act of 1913.

We think this indicates a congressional recognition of what we are clear is the fact, namely, that in common understanding the word "package" necessarily implies a wrapper, covering, or container of some kind and many times is used to include the same as well as the commodity thereby held or contained. Such expressions as "packages of soap," "packages of candy," and "packages of pencils," are but common illustrations of this fact, and we doubt not "a package

of tea" is equally common and appropriate. Then too, this construction avoids the seeming incongruity of holding that a flat lead sheet is a container. It also assumes that when Congress substituted, so far as teas are concerned, paragraph 627 for paragraph 195 of the act of 1909, in the first line of which the word "packages" was employed in association with cans and boxes as containers, it intended by omitting the word "packages" from 627 to indicate that the provision for "cans, boxes, and other containers" in that paragraph was not intended to include packages in the class of containers there referred to.

For these reasons and after much consideration we conclude that Congress intended to declare in paragraph 627 that the larger containers used in the shipment and transportation of tea put up and imported in packages of less than five pounds each should be taxed and not the immediate coverings, wrappings, or containers which constitute a part of the packages. It is not claimed that the smaller boxes or lead sheets in this case are unusual containers or coverings or designed for use otherwise than in the bona fide transportation of the merchandise.

The Government's claim that it was the intent of Congress to afford some measure of protection to the tea packers of this country is satisfied by this interpretation. The only difference is that we give effect to this intent by a tax upon the larger and more durable, useful, and valuable containers instead of upon those that are small, unsubstantial, and of no commercial value. Congress may well have recognized the soundness of the claim that, at least when free goods are considered, such immediate containers thereof as are before us should be given free entry and the consumers be thereby permitted to obtain without tax thereon a suitable holder or container of the merchandise in which to keep it until used and as an incident to the character of the commodity. Again this construction would seem to result in a greater uniformity of cost in the prices to the consumers of these package teas, because, instead of resulting in varying prices of the packages according to the duty upon the *immediate* containers or wrappings, which then would become the unit of taxation, logically, at least, a duty upon the larger containers would be distributed pro rata upon the packages contained by them, resulting in equality of cost of the package teas in any given container, which would not happen if there were packed in any given container packages whose immediate coverings or wrappers were subjected to different rates of duty.

The conclusion we reach renders it unnecessary to consider or dispose of any other questions raised by the record.

The judgment of the Board of General Appraisers is *reversed* and cause remanded with direction that reliquidation be had in accordance with the views herein expressed.