WRIGHT & GRAHAM Co. *et al. v.* UNITED STATES (No. 1588). UNITED STATES *v.* WRIGHT & GRAHAM Co. *et al.* (No. 1596).[1]

1. CONTAINERS OF TEA—WHEN DUTIABLE.

Paragraph 627, tariff act of 1913, levying duty· upon " cans, boxes, or other containers of tea packed in packages of less than five pounds," does not levy duty upon the immediate containers of tea in less than 5-pound packages. The provision is relative in its terms and does not apply to immediate containers.

2. CONSTRUCTION—DOUBT FAVORS IMPORTER.

Where there is entertained by the court a doubt as to the construction of a provision of law levying duty upon imported merchandise, it is the duty of the court to resolve that doubt in favor of the importer.

United States Court of Customs Appeals, January 28, 1916.

CROSS appeals from Board of United States General Appraisers, Abstract 38142.

[Reversed as to 1588; affirmed as to 1596.]

*McLaughlin, Russell, Coe & Sprague* and *Sharretts, Coe & Hillis* (*Thaddeus S. Sharretts* and *Edward P. Sharretts* on the brief) for Wright & Graham Co. *et al.*

*Bert Hanson*, Assistant Attorney General (*Thomas J. Doherty*, special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

These importations were of tea. The issues concern the coverings of the merchandise. Two appeals are here upon the same record, arising out of as many classes of coverings or containers employed.

---

[1] Reported in T. D. 36147 (30 Treas. Dec., 211).

One of these classes consisted of lead packets and tin boxes of tea, each weighing less than five pounds, packed in other intermediate metal or pasteboard coverings or containers, whereby the latter held a great number of the individual packages. The other class consisted of similar lead packets and tin boxes and packets and boxes made of pasteboard and metal, each containing less than 5 pounds of tea, without being encased in such intermediate coverings or containers. All the importations were made in ordinary shipping cases, the former class with and the latter without the intermediate coverings or containers. In each class of cases, some but not all of the immediate coverings were lined with or included more immediate content coverings of thin paper, in no case sufficiently strong to alone and unsupported constitute a covering of such of sufficient strength or stability to retain the contents either for the purpose of shipment or during consumption. Duty was levied by the collector in each case upon the immediate coverings under the provisions of paragraph 627 of the tariff act of 1913, reading in so far as pertinent as follows:

627. Tea not specially provided for in this section, and tea plants: *Provided,* That the cans, boxes, or other containers of tea packed in packages of less than five pounds each shall be dutiable at the rate chargeable thereon if imported empty: \* \* \*.

The Board of General Appraisers under the authority of the decision of this court in Wright & Graham *v*. United States (5 Ct. Cust. Appls., 453; T. D. 34976), an earlier appeal by the same importers, sustained the protests covering those cases wherein intermediate containers were employed, and, differentiating that case, overruled the protests in the cases wherein there were no intermediate containers or coverings. Cross appeals to this court bring here for review the decision of the board as to both classes of cases. Counsel for the importers strenuously contend that the case of Wright & Graham Co. *v*. United States, *supra*, the former appeal by the same importers, is conclusive of these appeals. The court is of the opinion that the facts as to the second class of cases covered by these appeals present a cause by no means necessarily decided in the former appeal; and, holding the views expressed in its opinion, the board with perfect propriety differentiated the cases and afforded this court the benefit of its views. In the last analysis, however, in both instances and in all the appeals, the determinative issue is one of law, resolved by answer to the question, Did Congress by the quoted paragraph direct assessment of duty upon the immediate coverings of imported tea?

This court in Wright & Graham Co. *v*. United States, *supra*, held to the contrary. Review and an overruling of that decision is herein asked by the Government.

After carefully reviewing the records of the former appeal, and a thorough study of this record, the briefs which are replete, the

pertinent debates of Congress, and the applicable law, the court is unable to find controlling warrant of decision herein supporting the Government's contention. At most, that contention is confronted with grave doubt. As was said by the board in its decision herein, there is "doubt as to the intent and meaning of Congress" as expressed in the paragraph. In such status of view the duty of the board and this court is well expressed by the board in G. A. 7015 (T. D. 30571), in construing the predecessor paragraph of this paragraph 195 (act of 1909), as follows:

The other rule, which in our judgment necessarily controls the decision in this case, was most admirably and briefly stated by Justice Nelson at circuit in the case of Powers v. Barney (5 Blatch., 202; 19 Fed. Cas., 1234), in which decision he says: "Another principle may also be invoked, which is, that in cases of serious ambiguity in the language of the act, or doubtful classification of articles, the construction is to be in favor of the importer, as duties are never imposed on the citizen upon vague or doubtful interpretations." The same rule was more elaborately stated by Justice Story in United States v. Wigglesworth, *supra:* "It is, as I conceive, a general rule in the interpretation of all statutes, levying taxes or duties upon subjects or citizens, not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operation so as to embrace matters not specifically pointed out, although standing upon a close analogy. In every case, therefore, of doubt, such statutes are construed most strongly against the Government and in favor of the subjects or citizens, because burdens are not to be imposed, nor presumed to be imposed, beyond what the statutes expressly and clearly import. Revenue statutes are in no just sense either remedial laws or laws founded upon any permanent public policy, and, therefore, are not to be liberally construed." See also Hartranft v. Wiegmann (121 U. S., 609).

Woolworth v. United States (1 Ct. Cust. Appls., 120; T. D. 31119; United States v. Hatters' Fur Exchange (1 Ct. Cust. Appls., 202; T. D. 31237); United States v. Matagrin (1 Ct. Cust. Appls., 309; T. D. 31406); United States v. Michelin Tire Co. (1 Ct. Cust. Appls., 518; T. D. 31544); United States v. Harper (2 Ct. Cust. Appls., 101; T. D. 31655); American Express Co. v. United States (3 Ct. Cust. Appls., 475; T. D. 33121); United States v. American Bead Co. (3 Ct. Cust. Appls., 509; T. D. 33166); Newhall & Co. et al. v. United States (4 Ct. Cust. Appls., 134; T. D. 33410); Goat and Sheepskin Import Co. et al. v. United States (5 Ct. Cust. Appls., 178; T. D. 34254).

This court in the former appeal of these importers expressed the same doubt. The opinion carefully reviews the history, legislative and judicial, of the paragraph, and concludes the congressional purpose to be to tax the intermediate rather than the immediate coverings of the tea. Undoubtedly, as the opinion indicates, the court was in a measure moved to that conclusion by the facts of that record. It concerned only importations containing intermediate coverings or containers, and stress is laid upon the fact that the evidence indicated a relative superiority in substance and value of the intermediate over the immediate coverings. It may be said in

passing, however, that that was not the controlling reason of the opinion. The relative value or strength of the coverings is not in that opinion made determinative of this issue; nor does the statute make such factors of its application. The court pointed with emphasis to the significant legislative fact that, as submitted to Congress, the paragraph read " cans, boxes, *packages*, and other containers," and note that Congress upon enactment struck out the word " packages," thereby indicating a purpose to confine the tax to a class of containers more durable than is ordinarily conceived by the word " packages." The court also adverted to the legislative fact that when " immediate " coverings were referred to in other paragraphs of the act, enumerating paragraphs 180, 199, 203, 209, 228, and 229, act of 1913, the word " immediate " was used by Congress.

As recited in the previous appeal by these importers, the parent provision to this paragraph originated as paragraph 195, tariff act of 1909. Its purpose was stated upon the floor of the Senate, wherein the provision originated, by Senator Aldrich, chairman of the Finance Committee, presenting the same, in answer to many inquiries of Senators as to its purpose, as follows:

Mr. ALDRICH. It applies to importations of this kind. It has been the habit of certain people to import, say, from Canada, 5-pound packages containing tea, which is on the free list, but those packages were valuable; that is, they were lithographed, they were practically works of art, and under the law as it now stands those packages came in free, because tea was free. So there were certain people sending tea to China and putting it up in 5-pound packages which were of themselves practically works of art, and importing those packages into the United States free of duty.

The same thing was true as to a large class of articles coming in from Germany, where highly decorated containers of tin were imported without duty because the contents were free or because the contents were liable to a low rate of duty.

The notable and pertinent fact is that the provision was stated *to apply only to those containers of packages weighing 5 pounds*, and, of course, by its terms, over 5 pounds. It was a provision aimed at a substantial class of merchandise of suitable strength and durability and size to hold at least 5 pounds of tea, and the Board of General Appraisers, construing the paragraph, so held. G. A. 7015 (T. D. 30571).

While the paragraph did not mention " tea," it was by its terms obviously intended to be, and was essentially so confined in practice. It was not intended by Congress, nor was it held in practice, to apply to any of the merchandise here in suit, though the record fairly discloses that package tea then, as now, was imported. That it was which gave rise to the 5-pound limitation.

Among the objections, if not the chief complaint, against this paragraph addressed to the Congress upon enactment of the present act, was that it was confined to metal containers only, and permitted

other more valuable containers to be imported free. There was, it is true, request for a provision levying duty upon all tea coverings. Tea, however, was to be continued by this act free of duty. It had been so in this country for over 70 years, or since September 11, 1841, excepting during the Civil War and from June 14, 1898, to January 1, 1903. And, under the general statutory provisions prevailing for as many years, the coverings of imported tea, unless unusual, were equally free. Of course the purpose of permitting the free importation of tea would be defeated by any tax upon the necessary or usual coverings of tea. Moreover, in view of the great variety and variant values of usual coverings of package tea, which follow the same into consumption, any tax upon the same, such as asserted, would not only result *pro tanto* in a defeat of " free tea " but in grossly unequal taxes of the same, accordingly as it was packed, and which, indeed, if here applied, we have no doubt would in many instances levy a tax greater than or measurably near the value of the tea.

Bearing in mind these facts, the court is loath to adopt a conclusion in construing a concededly doubtfully worded proviso which would in practice, oftentimes if not always, defeat the purview of the paragraph.

The court is not only of the opinion that Congress did not intend by this proviso to defeat the purview of the paragraph granting free entry of tea as usually imported in packages, but does not believe the words of Congress so import.

This statute speaks of and in terms contemplates *relative* coverings. Its application, if this be true, is confined to those cases only wherein that relation exists by reason of the presence of all those related coverings contemplated by the paragraph. The existence of the factors of relation is made, and thus becomes a condition of the applicability of the act. The grammatical arrangement of the words of this paragraph declare these necessary factors of relation. Let us repeat the proviso for immediate analysis:

627. * * * *Provided*, That the cans, boxes, or other containers of tea packed in packages of less than five pounds each shall be dutiable at the rate chargeable thereon if imported empty: * * *.

" That the cans, boxes, or other containers of " what? " Tea," only? No. But of " tea " " *packed in packages.*" Two related conditions of merchandise must be present: 1. " Cans, boxes, or other containers "; 2. " tea *packed in packages.*" There must be (1) packages of tea, (2) imported in cans, boxes, or other containers. By the same elementary rule, what is here made dutiable? Obviously, not the " tea," nor the " tea packed in packages," but the " cans, boxes, or other containers " which contain " tea packed in packages," and no other cans, boxes, or other containers. The two essential relative conditions, then, are, there must be " cans, boxes, or other

containers" *and also* "tea packed in packages." Where either is absent the proviso has no application.

The initial inquiry, then, is, What here constitutes "tea packed in packages"? Does the individual can, for example, constitute such? Does the single frail paper lining or bag surrounding the tea within each such constitute "tea packed in packages"? Obviously were these papers "packages" such was not the legislative concept, which speaks in the plural and hence of more than one package gathered within the particular container.

This court has frequently declared what constitutes "packages" under the laws of import commerce. That feature of the case is ruled by an early decision of this court, United States *v.* Yamashita (1 Ct. Cust. Appls., 341; T. D. 31435). The case concerned "dried fish, packed in 1-pound paper packages, sealed, ready for sale, such sealed packages being in turn packed in wooden packing boxes or cases, and thus imported." The court *inter alia* observed "it hardly seems possible that Congress intended to lay a duty on the paper in which the fish were wrapped, or to regard it as in itself a container or package." See, also, Choy Chong Woh & Co. *et al. v.* United States (2 Ct. Cust. Appls., 274; T. D. 31978) ; Illfelder & Co. *et al. v.* United States (2 Ct. Cust. Appls., 299; T. D. 32040) ; Bush & Co. (Inc.) *et al. v.* United States (6 Ct. Cust. Appls., 401; T. D. 35974). The "package" referred to in commerce between foreign lands and ours, as stated in those decisions, denotes "the usual unit of transportation from the country of export to the United States."

As stated in the Yamashita case and the previous Wright & Graham Co. decisions of this court, it is significant that the Congress dropped from the enumeration of dutiable subjects the word "packages," thereby confining the tax, according to the rule of *ejusdem generis* applied in the Yamashita case, to "cans, boxes, or other containers," all more durable and customary import containers.

Moreover, the very words of the proviso literally and legally confine this tax to those "cans, boxes, or other containers" "of tea packed in packages." In other words, to those containers in which there are a *plurality* or number of packages, which alone excludes application of the tax to those containers in which there are less than a plurality of packages of tea. In all cases, however, the immediate coverings of the tea here assessed with duty inclose but a single quantity of such. *Ex vi termini* such must be the case with all immediate coverings.

Finally, it may be noted that it would be a strange legislative course which commenced (par. 195, act of 1909) with the avowed purpose of levying duty upon intermediate containers which were being fashioned of such qualities and durability as to become competing commercial quantities and ended by (par. 627, act of 1913)

allowing these intermediate coverings free entry and taxing all kinds and classes of immediate coverings.

The court is of the view that paragraph 627 of the act of 1913 was intended by Congress as an extension of paragraph 195 of the act of 1909 from limited metal to all cans, boxes, and other containers of tea in which were packed packages of tea weighing less than 5 pounds. This construction in this and the previous appeal gives application to the paragraph by taxing the importation of intermediate containers of tea at least, but does not extend the tax to those immediate coverings of tea in packages of less than 5 pounds.

The decision of the board sustaining the first-noted class of protests is *affirmed*, and as to the latter, *reversed*.