UNITED STATES *v.* PAAR (No. 2798)[1]

GELATIN IN SHEETS COATED WITH HYDROCHLORIC ACID—MATERIAL AND MANUFACTURE DISTINGUISHED.

Thin sheets of gelatin coated with hydrochloric acid to make them insoluble, such treatment rendering the gelatin inedible, used for wrapping merchandise, is no longer gelatin but a manufacture of it, under paragraph 42, Tariff Act of 1922.

United States Court of Customs Appeals, December 14, 1926

APPEAL from Board of United States General Appraisers, Abstract 51984

[Affirmed.]

*Charles D. Lawrence,* Assistant Attorney General (*Oscar Igstaedter* and *Thomas J. Canty,* special attorneys, of counsel), for the United States.
No appearance for appellee.

[Oral argument October 20, 1926, by Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Appellee contends that his importation, sheet gelatin treated in hydrochloric acid, should be classified as entered—a manufacture wholly or in chief value of gelatin, at the rate of 25 per centum ad valorem under the last clause of paragraph 42 of the Tariff Act of 1922.

The collector of customs at the port of Los Angeles described the merchandise as gelatin in sheets, and assessed it for duty at the rate of 20 per centum ad valorem and 7 cents per pound, under the fourth clause of said paragraph, which is as follows:

PAR. 42. Edible gelatin, valued at less than 40 cents per pound, 20 per centum ad valorem and 3½ cents per pound; valued at 40 cents or more per pound, 20

---

[1] T. D. 41911.

per centum ad valorem and 7 cents per pound; *gelatin,* glue, glue size and fish glue, not specially provided for, valued at less than 40 cents per pound, 20 per centum ad valorem and 1½ cents per pound; *valued at* 40 *cents or more per pound,* 20 *per centum ad valorem and* 7 *cents per pound; casein glue,* agar-agar, isinglass and other fish sounds, cleaned, split, or otherwise prepared, *and manufactures, wholly or in chief value of gelatin,* glue or glue *size,* 25 *per centum ad valorem.* (Italics ours.)

The importer protested the collector's classification and the Board of United States General Appraisers (now United States Customs Court), sustained the protest, holding the merchandise to be a manufacture of gelatin. The Government appealed from the action of the board, and, here contends that the merchandise has been no further processed by manufacturing effort than to leave the commodity gelatin, and that it is still gelatin in sheets with a coating of hydrochloric acid.

The testimony of William Paar, witness for appellee, was brief, and constitutes the only testimony in the case. He stated: That the merchandise is nonedible; that it is used for wrapping merchandise, similar to the use of wrapping paper; that it is made of gelatin and treated with hydrochloric acid to make it insoluble; that it is more than gelatin in sheets, since it is dipped in hydrochloric acid; that ordinary gelatin is tasteless; that the sample before him, and which he had tasted, has a taste of acid, which shows it to be unfit for human consumption; that it has a bitter taste, salty taste; that it is manufactured in Michelstadt, Germany, and is made by hand by dipping a piece of cold plate glass into hot gelatin; that the gelatin sticks to the cold plate glass in an even sheet; that it is made in different sizes; that the plate glass is given a single dip into the gelatin and the gelatin adheres to the glass; that after cooling on the glass, the plate is dipped into the hydrochloric acid; that it is dried, cut with a knife, and peeled off; that he has sold the merchandise to date growers and dried food people; that in this country it is cut into different size sheets.

As imported, the merchandise consisted of sheets 24 inches long by 20 inches wide. There is no testimony in the record concerning the commercial meaning of the term "gelatin" or "gelatine." If the common meaning of the word "gelatin," as used in the fourth clause of said paragraph, is broad enough to include the merchandise as imported, then the contention of the Government is correct and the judgment of the Board of United States General Appraisers must be reversed. If, however, the common meaning of the term does not embrace merchandise processed and treated as indicated in the testimony, then the importer must prevail and the judgment of the trial court must be affirmed. The following definitions and descriptions of gelatin are set out as indicating the common meaning of the term:

Funk & Wagnalls New Standard Dictionary:

Gelatin: A hard, transparent, tasteless substance obtained from connective animal tissue, as skin, hoof, horns. It swells to a jellylike mass in cold water, but dissolves in hot water. Gelatin does not exist free in animal tissues, but is formed by the action of hot water.

Websters New International Dictionary:

Gelatin: Animal jelly; glutinous material obtained from animal tissues by prolonged boiling; specif., *Physiol. Chem.*, a nitrogenous colloid formed by the hydrating action of boiling water on the collagen of tendons, bones, ligaments, etc. Its distinguishing character is that of dissolving in hot water, and forming a jelly on cooling.

The Encyclopedia Britannica, Eleventh Edition:

Gelatin, or gelatine, the substance which passes into solution when "collagen," the ground substance of bone, cartilage, and white fibrous tissue, is treated with boiling water or dilute acids. It is especially characterized by its property of forming a jelly at ordinary temperature, becoming liquid when heated, and resolidifying to a jelly on cooling. The word is derived from the Fr. *gelatine*, and Ital. *gelatina*, from the Lat. *gelata*, that which is frozen, congealed or stiff.

The New English Dictionary, Vol. IV:

Gelatin, gelatine: I. The substance which is the basis of the jellies into which certain animal tissues (skin, tendons, ligaments, the matrix of bones, etc.) are converted when treated with hot water for some time. It is amorphous, brittle, without taste or smell, transparent, and of a faint yellow tint; and is composed of carbon, hydrogen, nitrogen, oxygen, and sulphur. It is used in the preparation of soups, jellies, etc., and latterly in many photographic processes; it is also pressed into thin sheets for making transparent cards.

The New International Encyclopedia, Vol. VIII:

Gelatin (from Neo-Lat. *gelatina*, from Lat. *gelatus*, p. p. of *gelare*, to freeze, from *gelu*, frost), or GLUTIN (not *gluten*). A hard, yellowish, transparent, elastic substance obtained from connective animal tissues, especially the organic constituents of bones. If bones are treated with cold dilute acids, their mineral matter is dissolved out, the residual organic matter, called *ossein*, retaining the shape of the bones and gradually swelling up to a transparent elastic mass. If this ossein is cautiously treated with hot dilute acids, or simply for a long time with boiling water, it is hydrolyzed and converted into gelatin.

The Century Dictionary and Cyclopedia, Vol. IV:

Gelatin, gelatine: I. n. A concrete animal substance, transparent, hard, and tasteless, which swells without solution in cold water, dissolves in warm water and in acetic acid, and is insoluble in alcohol or ether. Gelatin does not exist as such in the animal tissues, but is formed by the action of boiling water on connective tissues, cartilage, ligaments, and tendons, as well as on skin, horn, fish scales, etc. The coarser form of gelatin from hoofs, hides, etc., is called *glue*; that from skin and finer membranes is called *size*; and the purest gelatin, from the air-bladders and other membranes of fish, is called *isinglass*.

From the foregoing it is easily ascertained that one of the chief characteristics of the merchandise before being treated with hydrochloric acid is its solubility in hot water. It was gelatin then and probably edible, and, no doubt, suitable for conversion into a number of different articles. After receiving the hydrochloric dip it was dedicated to a use differing from some of the uses to which it was suitable prior to the treatment. It was more than gelatin. The

record does not show that it had acquired a new name and, possibly, commercial testimony might show that it is still known as gelatin, but under the proof in this case, after the acid treatment, it had a new use, as a wrapping medium for merchandise, and since it was insoluble in water and unfit for food, it took on new characteristics.

We think the rule is well established that a manufacture is an article that has been, by a manufacturing effort or process, advanced and changed from its original condition so that it takes on the characteristics of a different article, or has attained a different name or use. In other words, it must pass from its original condition to a different condition which may be distinguished by a different name or a different character or use. *Ishimitsu Co.* v. *United States*, 11 Ct. Cust. Appls. 186, T. D. 38963; *Anheuser-Busch Brewing Association* v. *The United States*, 207 U. S. 556. What constitutes a manufacture has been so often passed upon by this and other courts as to obviate the necessity of prolonged citation.

From this record, agreeable to the finding of the trial court, we are of the opinion that the merchandise is no longer gelatin, but a new article adapted to an entirely different use, and that it has taken on new characteristics by virtue of manufacturing efforts.

The Government, in its brief, cites, as supporting its contention, the case of *American Express Co.* v. *United States*, 3 Ct. Cust. Appls. 475, T. D. 33121, which involved strips of edible gelatin imported under the tariff act of 1909. The *American Express Co.* case, *supra*, cited T. D. 25236, which concerned gelatin in sheets under the tariff act of 1897. In view of the marked changes in later tariff enactments, especially the one now under consideration, a review of the foregoing decisions convinces us of the correctness of our conclusions reached in this case.

The judgment of the Board of United States General Appraisers (now United States Customs Court), is *affirmed*.