UNITED STATES *v.* RUDOLPH LESCH (No. 3334)[1]

[1] T. D. 44400.

212

United States Court of Customs and Patent Appeals, November 10, 1930

*Charles D. Lawrence*, Assistant Attorney General (*Philip Stein* and *Ralph Folks*, special attorneys, of counsel), for the United States.
Submitted on record by appellee.

[Oral argument November 8, 1930, by Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Appellee, as the representative of the Carnegie Corporation, imported, for free distribution to various educational institutions in the United States, a great number of so-called "color prints." The collector assessed them with duty at 5 cents per pound and 20 per centum ad valorem under paragraph 1305 of the Tariff Act of 1922, as printed matter on surface-coated paper. It was claimed that the prints were entitled to free entry under paragraph 1530 which reads as follows:

PAR. 1530. Any society or institution incorporated or established solely for religious, philosophical, educational, scientific, or literary purposes, or for the encouragement of the fine arts, or any college, academy, school, or seminary of learning in the United States, or any State or public library, may import free of duty any book, map, music, *engraving, photograph, etching, lithographic print,* or chart, for its own use or for the encouragement of the fine arts, and not for sale, under such rules and regulations as the Secretary of the Treasury may prescribe. [Italics ours.]

The collector refused free entry, partly on the ground that the special requirements of the paragraph were not met and also on the following ground:

The merchandise in question consists of color prints on surface-coated paper, and in the opinion of the appraiser not of the character of merchandise covered by par. 1530, act of 1922.

Upon protest the United States Customs Court held that the merchandise consisted of photographs and sustained the protest. The Government has appealed here and admits that the requirements of the free-list paragraph have been complied with and that the sole issue presented is embraced in the single proposition, to wit: Are the articles, Exhibits 1 and 2, *engravings, photographs, etchings,* or *lithographic* prints as provided for?

Two witnesses testified at length for the importer and one witness testified for the Government.

The first witness for the importer, Rudolph Lesch, said, among other things, that the prints were made by a process known as color photography and that they were color photographs, and that a description of the process of their making was found in the New International Encyclopedia, 1926, Volume V, at page 623, and that the word "Farbenphotographie," printed on the pictures, meant color photography.

John R. Hecht, a former examiner of paintings, engravings, etchings, photographs, and prints of various kinds, in the office of the appraiser at the port of New York, testified for the importer that the plate from which the print at bar was made was an "etched plate; a plate etched by photochemical process," and that the plate was known as a halftone plate and also was commonly known as a 4-color print. He said that the exhibits are further known as 4-color prints; that they are, however, printed from plates etched by photochemical processes but that 4-color prints are not ordinarily known as etchings and that they are not known as engravings.

The Government's witness, Charles W. Kingsbury, a publisher of art prints, post cards, greeting cards, etc., for 20 years, testified that the exhibits were 4-color process prints; that they were produced from four metal plates made by the so-called color separation process; that to produce the plate a camera with ray filters was necessary; that from these plates prints were made by coming in contact with them; that he never sold this article but had sold similar articles made by a similar process; that he sold them as candy wrappers and that they were produced by the 4-color process; that he did not term them photographs; that the process described in Volume V, at page 623, on color photographs in the New International Encyclopedia, does not describe the process by which the prints at bar were made; that Volume XXII of the same authority, under the heading of 3-color process, treats of the correct manner of making the merchandise at bar.

The court below found from this rather confusing evidence as follows:

(3) That they are known as 4-color prints and were produced by the photochemical process, which is described at length under the caption "Color Photograph," in the New International Encyclopedia, Volume V, page 623, and in the testimony herein.

Regarding said process, we quote from the testimony of the witness Hecht:

This process is known as the 4-color process; in this case the painting to be produced is exposed before a camera; the first exposure is with the ordinary lens; from this exposure a plate is made which is printed in black; the next exposure from the same position is by means of a ray filter, which is a little lens which excludes everything but the red rays; from this exposure another plate is made which is printed in red; the next exposure from the same position is made through

a ray filter which excludes everything but the blue rays, and a plate is made; the next exposure excludes everything but the yellow rays, and from this exposure there is a plate made which excludes everything but yellow. The impression of these plates are made one upon the other in the four colors, black, red, blue, and yellow, and the combination of these colors produce certain hues in the picture.

\*     \*     \*     \*     \*     \*     \*

In the camera is placed a yellow plate which is coated with a sensitized solution the same as a photographic film or plate. The exposure is made through a screen which breaks up the massed colors of the picture into a series of small dots. When these yellow plates, the sensitized yellow plates, have been exposed in the camera, they are exposed with photographic negatives and will develop the upper plate. The plates are then treated with acid; the acid eats into all the exposed parts of the yellow plate, producing what is known as a halftone plate.

We are satisfied that the articles are photographs within the letter and spirit of paragraph 1530, particularly since the word is there used without limitation. If Congress intended to exclude colored photographs produced by the photochemical process it would undoubtedly have said so as it did in paragraph 1704 where it limited the words "etchings" and "engravings" to include only such as are "\* \* \* etched or engraved with hand tools and not such as are \* \* \* etched or engraved by photochemical or other mechanical processes."

After a careful study of the testimony and the several written articles on the subject of color photography, we conclude that the importation at bar is known as a 4-color print and was produced by the photochemical process; that is, the plates were made by the colored photography process which embraced both an etching and a photographic process and that the prints were made from the plates so produced.

As we understand it, ordinary photographs are printed from negatives or plates which are made by light exposures upon sensitized plates, the action of the light on the sensitized plate bringing about some kind of chemical action, and ordinarily a photograph is not the result of any etching process. In *McLaughlin & Freeman* v. *United States*, 18 C. C. P. A. (Customs) 128, T. D. 44094, where paragraph 1310 was under consideration, we defined a "photograph" as meaning "a picture or likeness obtained by photography."

It seems obvious that the word "etching" as used in paragraph 1530, having no limitations, is used in a broader sense than the word "etching" as used in paragraph 1704, where all etchings made by photochemical or other mechanical processes are excluded. The instant importation is made by photographic and etching processes. The fact that the color photograph at bar was made in part by etching, under these circumstances, should not exclude it from the paragraph.

We are impressed with the weight given by the court below to the language used in paragraph 1704 where Congress limited the words "etchings" and "engravings" to those only which are "etched or engraved with hand tools and not such as are printed from plates or blocks etched or engraved by photochemical or other mechanical processes." It seems to us, as it evidently seemed to the court below, that if Congress had wished to exclude the product of color

photography from the word "photograph" in the paragraph under consideration, it would have employed language similar to that used in paragraph 1704. We know of no good reason why Congress did not wish to include within the term "photograph" or "etching," in paragraph 1530, the product of color photography, since the paragraph expressly provides that the product shall not be for sale and is for the encouragement of the fine arts, etc. We therefore believe that the word "photograph" is used in this paragraph in a broad sense and should be given, for the purposes of this paragraph, a meaning broad enough to include the merchandise at bar.

In view of the expressed purposes of the paragraph and the great number of articles therein contained, the exclusion of the imported merchandise from the paragraph at bar would not be possible without considerable doubt as to the correctness of such a result. We would hesitate to reverse the decision of the court below on such a doubtful construction, and furthermore, the taxpayer should not be taxed upon a doubtful construction of the statute. *Powers* v. *Barney*, 5 Blatch. 202, 19 Fed. Cas. 1234; *Wright & Graham Co.* v. *United States*, 6 Ct. Cust. Appls. 528, T. D. 36147; *United States* v. *Ducommun Hardware Co.*, 7 Ct. Cust. Appls. 353, T. D. 36904.

We think, under the circumstances of this record, the court below properly sustained the protest and its judgment is *affirmed*.

GRAHAM, P. J., and LENROOT, J., concur in the conclusion.