UNITED STATES v. E. F. MORLEY & CO. ET AL. (No. 3362)[1]

[1] T. D. 44639

United States Court of Customs and Patent Appeals, January 28, 1931

*Charles D. Lawrence*, Assistant Attorney General (*James R. Ryan* and *Ralph Folks*, special attorneys, of counsel), for the United States.

*Barnes, McKenna & Halstead* (*Samuel M. Richardson* of counsel) for appellees.

[Oral argument December 10, 1930, by Mr. Folks and Mr. Richardson]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court sustaining in part the protests of the appellees herein.

The merchandise involved consists of kippered herring imported at the port of New York and assessed for duty by the collector under that portion of paragraph 720 of the Tariff Act of 1922 reading as follows:

PAR. 720. * * * all fish (except shellfish), pickled, salted, smoked, kippered, or otherwise prepared or preserved (except in oil or in oil and other substances), in immediate containers weighing with their contents not more than fifteen pounds each, 25 per centum ad valorem; * * *

The importers protested, claiming the merchandise to be dutiable under the last clause of said paragraph 720, which reads as follows:

* * * in bulk or in immediate containers weighing with their contents more than fifteen pounds each, 1½ cents per pound net weight.

Other claims were made in the protests, but counsel for appellees stated in the court below that the claim under said last clause of paragraph 720 was the one relied upon, and it will be so considered here.

The evidence establishes that the fish, in quantities varying from two to six, were placed in cellophane wrappers, loose and unsealed, and that a considerable number of such cellophane wrappers, with their contents, were in turn placed in a wooden box which, together with its contents, weighed more than 15 pounds; that in so far as the weight of the fish in any of said cellophane wrappers is concerned, it is in all cases less than 15 pounds, and that the contents of each of these cellophane wrappers varies in weight; that upon the cellophane wrappers inclosing the fish there is a tag or label showing the country of origin. By stipulation of the parties a box of kippered herring was produced upon the argument before us, which it was agreed constituted a proper sample of the merchandise involved herein in its condition as imported.

The Government contends that the evidence shows that the fish are wrapped as aforesaid and they are then packed in a wooden box, which wooden box is then encased in another container.

Appellees' counsel claims that Government counsel have misunderstood the testimony with regard to containers, and that the testimony shows there is only one container in which the fish wrapped in cellophane wrappers are placed. We think appellees' counsel is correct and that the testimony shows that there is but one wooden box in which the fish, wrapped as aforesaid, are placed, and that the merchandise as imported consists of the fish wrapped in cellophane paper and contained in one wooden box.

The Government contends that said cellophane wrappers are the "immediate containers" of the fish and that therefore the classification made by the collector was correct, and the protests should have been overruled by the lower court. The Government also contends that the lower court erred in holding that the wholesale unit of sale is controlling as to what is or what is not the immediate container. In view of the conclusion we have reached, it is not necessary for us to pass upon this latter contention for the reason that, under the facts in this case, we do not regard the method of sale as material.

We are clear, from an inspection of the samples before us, that the cellophane wrappers in which two or three or more fish are placed are not "immediate containers" within the meaning of those words as used in said paragraph 720. They do not serve the ordinary purposes of a container; they are loose and unsealed. The fish around which they are wrapped are not of uniform weight. They could not ordinarily be carried away by a retail purchaser without being first inclosed in some other wrapper. It would appear that the use of the wrapper is primarily for sanitary purposes, as wax paper is often loosely wrapped around certain perishable foods.

We think the case at bar is clearly distinguishable from the line of tea cases relied upon by the Government in its brief and upon oral argument.

The case of *Wright & Graham Co.* v. *United States*, 5 Ct. Cust. Appls. 453, T. D. 34976, describes the character of the wrappings or coverings involved in that line of cases. We quote from the opinion in the case above cited:

* * * The immediate containers, holders, or coverings of the tea were either sheet lead, cardboard boxes, or boxes with cardboard sides and tin tops and bottoms. * * *

\* \* \*· \* \* \* \*

As we have said, the immediate containers or coverings involved in this case have a capacity of, or in fact contain, from 1½ to 4 ounces of tea each. They are not expensive, are not especially durable or substantial in their construction, and after the contents have been consumed are of no value as articles of merchandise, although *the boxes may have some further use as containers*. [Italics ours.]

We do not think these cellophane wrappers loosely wrapping fish are at all comparable to the containers involved in the tea cases.

It is not practical to lay down a hard and fast rule by which it may be determined what is or is not an "immediate container." Many cases must be determined by the particular facts in those cases, without regard to any technical definition, and the case at bar is one of this character.

We hold that the cellophane wrappers here involved are not "immediate containers" within the meaning of those words as used in said paragraph 720, and the judgment of the United States Customs Court is *affirmed*.