UNITED STATES *v.* STROHMEYER & ARPE CO., TRANSATLANTIC IMPORTING CO. (No. 4053)[1]

United States Court of Customs and Patent Appeals, October 25, 1937

*Joseph R. Jackson,* Assistant Attorney General (*Charles D. Lawrence,* Special Assistant to the Attorney General, and *Richard E. FitzGibbon,* special attorney, of counsel), for the United States.

*Allan R. Brown* for appellees.

[Oral argument October 6, 1937, by Mr. Lawrence and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

In the United States Customs Court, Third Division, five protests by appellees (two of Strohmeyer & Arpe Co., and three of the Transatlantic Importing Co.) were consolidated for trial. The protests involved the proper classification of five importations of an herb called origan or origanium which, in the condition imported, consisted of small bunches of stems with flowers and leaves attached thereto,

---

[1] T. D. 49242.

tied with grass or other vegetable fiber, and packed in baskets about two and one-half feet long, one foot wide, and three feet high, weighing approximately twenty-five to thirty pounds each.

The merchandise was classified by the Collector of Customs as "spices   *   *   *   not specially provided for" under the italicized portion of the following quoted provision of paragraph 781 of the Tariff Act of 1930:

PAR. 781. * * * mixed spices, and *spices* and spice seeds *not specially provided for*, including all herbs or herb leaves in glass or other small packages, for culinary use, 25 per centum ad valorem:  *  *  *.  [Italics ours.]

The importers protested the said classification and assessment of duty and claimed the merchandise to be free of duty as "vegetable substances, crude or unmanufactured, not specially provided for," under paragraph 1722 of said act. The protests were sustained by the trial court and the United States has here appealed from its decision and judgment.

The position of the Government, as we understand it, is that in view of this court's decision in *United States* v. *S. B. Penick & Co.*, 24 C. C. P. A. (Customs) 436, T. D. 48901, it is not contended that the imported merchandise should be classified as spices, not specially provided for, but that it is aptly described and properly dutiable under that portion of the above-quoted provision of paragraph 781 reading: "all herbs or herb leaves in glass or other small packages, for culinary use," and that the collector, therefore, properly classified the merchandise and assessed the same with duty at 25 per centum ad valorem.

We notice that the decision of the trial court was rendered and this appeal of the United States taken prior to our decision in the above-entitled cause.

In this court, as the case is presented to us, there are but two questions involved: First, does the merchandise respond to the term "herbs   *   *   *   in glass or other small packages, for culinary use"; second, if it is not dutiable under the last above-quoted provision, are the vegetable substances to be regarded as crude?

The record conclusively shows that merchandise of this kind, when imported into this country in small packages, ready to use for culinary purposes, is packed in small boxes, envelopes, or glass jars, and that when so imported the stems have been removed. In the *Penick & Co.* case, *supra*, which involved herb leaves in bulk, we reviewed the legislative history of paragraph 781, applied the rule of *expressio unius est exclusio alterius* and held that Congress could not have intended that herbs or herb leaves imported in bulk should be dutiable under said paragraph 781.

The bunches of origan at bar, which are packed in the large baskets, consist of one hundred or more stems upon which are leaves and

flowers. Each bunch is approximately eight inches long with an average diameter of approximately two inches. The testimony shows that the individual stems are clipped by hand from the origan bush or shrub and packed into the baskets and that they are so bunched for the purpose of preventing the leaves from "falling around the basket" and that tying the same in bunches and placing them in the baskets was so done "for transportation, for importation."

On the first question involved, to wit, whether or not the merchandise as imported was "in glass or other small packages," we note that Congress has given us an example of one kind of package for herbs or herb leaves used for culinary purposes which it wanted to include within paragraph 781. That kind was a small glass package. The instant merchandise has no outside container except the basket. The basket in which the instant merchandise was imported obviously cannot be regarded as a small package. In fact the Government does not urge that we hold the baskets of bunches to be small packages.

While some of the definitions of "package" examined may be broad enough to include an unwrapped, bound-together bunch of articles, we do not think that Congress used the term in that sense, but rather with the meaning ascribed to the term in *Wright & Graham Co.* v. *United States*, 5 Ct. Cust. Appls. 453, T. D. 34976, in which it was said:

> We think this indicates a congressional recognition of what we are clear is the fact, namely, that in common understanding the word "package" necessarily implies a wrapper, covering, or container of some kind and many times is used to include the same as well as the commodity thereby held or contained. Such expressions as "packages of soap," "packages of candy," and "packages of pencils," are but common illustrations of this fact, and we doubt not "a package of tea" is equally common and appropriate. * * *

See also *United States* v. *Yamashita*, 1 Ct. Cust. Appls. 341, T. D. 31435.

From an inspection of the samples, it seems to us that it is natural to conclude that this merchandise, in the condition as imported, is not intended for immediate use and that it is in fact imported in bulk, and necessary to be processed or manufactured in this country into a condition suitable for culinary use.

We, therefore, conclude that the merchandise was imported in other than glass or other small packages and not dutiable under said paragraph 781.

On the second issue presented, the record does not show that there was any contention made at the trial below by any one that the vegetable substance involved was not crude. The court below, however, from an examination of the samples concluded that the merchandise was crude. As was the situation concerning the same issue in the

*Penick & Co.* case, *supra,* the record here on this question is not as full as it might be. This probably results from the fact that there was no controversy on this question at the time the testimony was taken. The instant record, however, does show that the articles at bar, which are referred to as leaves by one of the witnesses, are clipped from the shrubs and packed into the baskets. Referring to the merchandise as imported, one witness stated it was—

All in small bunches like this sample in order to prevent the leaves from falling around the basket, and they are tied up in small bunches in the basket * * * it is packed that way for transportation, for importation.

The exhibits of the imported merchandise which are before us have the appearance of having gone through no other process than that of natural drying. There is nothing in the record to indicate that they had gone through any other process. The trial court found that the importation was crude and we are not disposed, under the circumstances, to disturb this finding.

It follows from the foregoing considerations that the merchandise is not dutiable as assessed and that the trial court properly held that it was free of duty under said paragraph 1722, *supra,* as a crude vegetable substance, not specially provided for, and the judgment of the United States Customs Court is *affirmed.*