(C. D. 1957)

HUDSON SHIPPING CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided January 21, 1958)

*Barnes, Richardson & Colburn* (*Edward N. Glad* of counsel) for the plaintiff. *George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

WILSON, Judge: The merchandise at bar consists of. "frozen red snappers, beheaded, eviscerated, with scales and fins removed" (R. 2). It was classified by the collector under paragraph 720 (b) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, at the rate of 12½ per centum ad valorem, as fish, prepared or preserved, in immediate containers weighing with their contents not more than 15 pounds each.

Plaintiff claims the merchandise properly dutiable at the rate of 1 cent per pound under paragraph 717 (a) of the said act as "Fish, fresh or frozen * * * whole, or beheaded or eviscerated or both, but not further advanced (except that the fins may be removed): Halibut * * * other fish, not specially provided for." Alternatively, plaintiff claims the merchandise dutiable under paragraph 720 (b) of the tariff act, as modified, *supra*, at the rate of 1 cent per pound net weight, as fish, prepared or preserved, not specially provided for, "in bulk or in immediate containers, weighing with their contents more than fifteen pounds each."

The position of the Government was stated by counsel for the defendant as follows:

MR. SKLAROFF: * * * First the Government feels that scaling the fish removes it from 717 (a), because of the nature of the operations there set forth. The term "scale" does not appear in 717 (a), and the evidence will show that there is a cellophane wrapping involved around each fish. That, claims the Government, is the immediate container, and there is no question, I think, of the fact that the fish in the cellophane do weigh less than 15 pounds, but the evidence will also show that a number of these cellophane wrapped fish are placed in a

large carton, and if the court finds the carton to be the immediate container, then Mr. Glad's claim is correct. (R. 3–4.)

Plaintiff introduced in evidence as representative of the wrapping in which each fish was contained two sheets of cellophane wrapper (plaintiff's illustrative exhibit 1), the record indicating that "the sheet in which each fish was wrapped was about the size of both those taken together" (R. 7–8). It appears that there is no writing on the cellophane sheets in which the fish are wrapped.

The undisputed evidence in this case shows that the imported fish were loosely wrapped in cellophane sheets (R. 9), after which they were packed in large corrugated cartons, ranging in size from 2 to 4 pounds (R. 6); that each cardboard carton with its contents weighed about 50 pounds and contained markings as to the nature of the merchandise, the country of origin, and the company for whom imported. It further appears that the involved snappers contained in each carton were imported in odd weights, averaging in size from 3, 5, and 7 pounds each (R. 6–7). Fish such as those here imported are sold to wholesalers, in carton quantity, according to the marked weights on each carton. The fish are sold by the wholesaler to his customers in quantities by weight, the testimony indicating that "If a customer wants 10, 15, or 20 pounds, he takes out several fish, throws them on the scale, and takes off the cellophane paper" (R. 12).

In our opinion, the operation of scaling the imported fish, as disclosed by the record herein, removes the merchandise from the provisions of paragraph 717 (a) of the tariff act for "Fish, fresh or frozen * * * whole, or beheaded or eviscerated or both, but not further advanced (except that the fins may be removed)." The scaling of the fish constitutes a preparation and advancement beyond that permitted by the provisions of paragraph 717 (a), *supra*. Plaintiff's protest claim under this paragraph is, accordingly, overruled. On the other hand, the imported fish come within the provisions of paragraph 720 (b) of the tariff act for "Fish, prepared or preserved, not specially provided for."

There remains for disposition the question whether or not the involved merchandise is packed in immediate containers weighing with their contents more than 15 pounds each.

What constitutes an "immediate container" of merchandise has previously been considered by this and our appellate court. In *A. A. Vantine & Co.* v. *United States*, 20 Treas. Dec. 863, Abstract 25478, the question before the Board of General Appraisers was whether certain coverings or boxes should be included in the dutiable weight of imported confectionery or candy under paragraph 219 of the Tariff Act of 1909, which contained the provision: "The weight and the value of the immediate coverings, other than the outer packing case or other covering, shall be included in the dutiable weight and the

value of the merchandise." It appeared that the imported candy was packed either in half-pound paper boxes or wooden cylindrical boxes containing about a pound. These smaller packages were enclosed in a larger packing case or outside box. The most immediate covering of the confectionery was a thin paper, which was used for the purpose of lining the small packages and preventing the candy from adhering to them. The confectionery itself was packed in powdered sugar, considerable quantities of which were placed above and around the candy. It was the contention of the importer in the *Vantine & Co.* case, *supra*, that "immediate coverings" should not be construed to include the wooden and paper boxes and that these should, accordingly, be excluded from the dutiable weight. In holding that this contention of the importer was without merit, the board stated as follows:

* * * We think this position is untenable. It will be noted the form of the expression is "the weight and the value of the immediate coverings, other than the outer packing case." Clearly this is sufficiently definite and specific to indicate that only the outer packing cases should be excluded from the dutiable weight. "Immediate" is a relative term, and applies in this case to both the inside tissue paper and the wooden and pasteboard boxes containing the candy.

The situation in the *Vantine & Co.* case, *supra*, does not parallel that in the case before us. Unlike paragraph 219 of the Tariff Act of 1909, covering the merchandise involved in the cited case, paragraph 720 (b) of the tariff act here under consideration does not contain an excepting provision with respect to the outer coverings or containers of the merchandise, and the *Vantine & Co.* case, *supra*, is thus distinguishable from the case at bar.

In *H. Horsfield* v. *United States*, 26 Treas. Dec. 814, Abstract 35593, the merchandise consisted of dead chickens, packed in a wooden box, which were assessed for duty under paragraph 229 of the Tariff Act of 1913 under the provision therein for poultry, dead or prepared in any manner, "including the weight of the immediate coverings or containers." The only question raised was whether the wooden boxes should have been included in the weight of the commodity. The record disclosed that a sort of parchment or oilpaper was placed around the chickens inside the boxes, covering them with about two thicknesses to keep the flesh from the wood and from exposure, it appearing that the box was not a tight box, but one put together in a rather loose way, being sufficient to contain and protect the poultry which, it was indicated, was brought in in a frozen condition. The protest of the importer that the dutiable weight should have been the weight of the poultry, including the weight of the paper but excluding the weight of the wooden boxes, was sustained.

In the *Horsfield* case, *supra*, the record disclosed that the outer container or wooden box was put together "in a rather loose way" and

was not of tight construction, being merely sufficient to contain and protect the poultry. The inner covering for the poultry there in question was, however, sufficiently thick and substantial to keep the flesh of the poultry from the wood and from exposure. In the case at bar, the record discloses that the snappers in question are loosely wrapped in cellophane sheets and then packed in large corrugated boxes, apparently of substantial construction. "Containers" or "coverings," in our opinion, connote some idea of permanency, and "immediate," as heretofore indicated in the *Vantine & Co.* case, *supra*, is a relative term. The determination as to what constitutes the "immediate container" of merchandise must be governed by the facts in each case. We are of opinion that the record in the case at bar supports a finding that the immediate container of the fish here involved is the large corrugated carton in which the merchandise was imported.

The holding of our appellate court in the case of *United States* v. *E. F. Morley & Co. et al.*, 18 C. C. P. A. (Customs) 388, T. D. 44639, to which our attention has been directed by counsel for the plaintiff in its brief, substantiates our holding and, in our opinion, is controlling in the instant case. The merchandise involved in the *Morley & Co.* case, *supra*, consisted of kippered herring, which was classified under paragraph 720 of the Tariff Act of 1922 with a duty assessment as fish (kippered) "in immediate containers weighing with their contents not more than fifteen pounds each," the latter clause being the same as that which appears in the paragraph of the act under which the merchandise at bar was classified. Similarly, as here, the plaintiffs in the *Morley & Co.* case, *supra*, claimed the merchandise dutiable under the pertinent paragraph at the lower rate as fish "in bulk or in immediate containers weighing with their contents more than fifteen pounds each." The evidence there established that the fish, in quantities varying from two to six, were placed in cellophane wrappers, loose and unsealed, and that a considerable number of such cellophane wrappers, with their contents, were, in turn, placed in a wooden box which, together with its contents, weighed more than 15 pounds; that, insofar as the weight of the fish in any of the cellophane wrappers was concerned, it was in all cases less than 15 pounds; and that the contents of each of the cellophane wrappers varied in weight. It further appeared that upon the cellophane wrappers enclosing the fish there was a tag or label showing the country of origin of the merchandise.

In holding that the cellophane wrappers there involved were not "immediate containers," within the meaning of those words, as used in the pertinent paragraph 720 of the Tariff Act of 1922, our appellate court, in the *Morley & Co.* case, *supra*, at page 390, stated:

Appellees' counsel claims that Government counsel have misunderstood the testimony with regard to containers, and that the testimony shows there is only one container in which the fish wrapped in cellophane wrappers are placed. We think appellees' counsel is correct and that the testimony shows that there is but one wooden box in which the fish, wrapped as aforesaid, are placed, and that the merchandise as imported consists of the fish wrapped in cellophane paper and contained in one wooden box.

\* \* \* ` \* \* \* \*

We are clear, from an inspection of the samples before us, that the cellophane wrappers in which two or three or more fish are placed are not "immediate containers" within the meaning of those words as used in said paragraph 720. They do not serve the ordinary purposes of a container; they are loose and unsealed. The fish around which they are wrapped are not of uniform weight. They could not ordinarily be carried away by a retail purchaser without being first inclosed in some other wrapper. It would appear that the use of the wrapper is primarily for sanitary purposes, as wax paper is often loosely wrapped around certain perishable foods.

So, in the case at bar, we hold that the merchandise as imported consists of the fish wrapped in cellophane sheets and contained in the large corrugated carton which, in our opinion, constitutes the "immediate container" of the imported fish. The evidence in the case at bar, as in the *Morley & Co.* case, *supra*, shows that the cellophane wrappers "do not serve the ordinary purposes of a container." The merchandise in question is loosely wrapped in these cellophane sheets.

A further reason supporting our conclusion herein as to what are the immediate containers of the imported merchandise, is the fact that the cellophane wrappers in this case have no markings on them whatsoever, but certain markings showing the country of origin and the nature of the imported merchandise are imposed on the cardboard cartons in which the imported fish are placed.

For the aforesaid reasons, the claim that the merchandise at bar is properly dutiable under paragraph 720 (b) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, at the rate of 1 cent per pound net weight as "Fish, prepared or preserved, not specially provided for: \* \* \* In bulk or in immediate containers, weighing with their contents more than fifteen pounds each," is sustained. In all other respects and as to all other claims, the protest is overruled. Judgment will issue accordingly.