(C.D. 2213)

Chong Kee Jan Co.
Joseph A. Paredes  } *v.* United States

United States Customs Court, First Division

(Decided November 2, 1960)

*Lawrence & Tuttle* (*Barnes, Richardson & Colburn* by *George R. Tuttle, Jr.*, of counsel) for the plaintiffs.

*George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector* and *Richard H. Welsh*, trial attorneys), for the defendant.

Before Oliver, Mollison, and Wilson, Judges

Wilson, Judge: The merchandise here under protest (plaintiffs' illustrative exhibit 1) consists of small ½-pound packages of dried, salted fish, wrapped in a cellophane container (not airtight), which

are then packed in a larger cardboard or wooden container. The importation was assessed with duty at the rate of 25 per centum ad valorem under paragraph 719(5) of the Tariff Act of 1930 as fish, in immediate containers (not airtight) weighing with their contents not more than 15 pounds each. Plaintiffs, in this case, claim that the "immediate container" for the purpose of duty assessment is the cardboard carton or wooden box in which the cellophane packages of fish are packed and that, accordingly, the involved fish are properly dutiable at only 1¼ cents per pound under the same paragraph as that under which assessment was made.

The pertinent statute herein involved is as follows:

Paragraph 719(5), Tariff Act of 1930:

(5) other fish, in bulk or in immediate containers weighing with their contents more than fifteen pounds each, 1¼ cents per pound net weight; in immediate containers (not air-tight) weighing with their contents not more than fifteen pounds each, 25 per centum ad valorem.

The only testimony introduced in this case was that of Mr. Bill Tom, secretary of the Chong Kee Jan Co., importer of foodstuffs and one of the plaintiffs at bar. Mr. Tom testified that the imported fish are packed in a cellophane bag which is sometimes heat sealed, or stapled together, or tied with a string (R. 3–4); that the cellophane packages of fish, represented by plaintiffs' illustrative exhibit 1, are sometimes packed in wooden cases and sometimes in paper cartons, which contain 60 individual packages of fish, one-half of 1 pound each, or 30 pounds of fish (R. 5). The outside carton or box contains certain Chinese words, which indicate the type of fish contained therein, size, and number of ½-pound packages. It also has the number and markings of the plaintiff company, the name of the packer, and markings to indicate the country of origin, Hong Kong (R. 5–7).

Plaintiffs' witness further testified that, after being taken out of the wooden or paper carton, the fish are placed on display shelves in market baskets. The fish are sold in the ½-pound packages and put into a paper bag at the time the customer takes the merchandise from the store (R. 8). Under cross-examination, Mr. Tom testified that the wooden carton or case has stenciled on it in English the words "dried fish"; that it also indicates the name of the company and the country of origin; and that it states thereon "so many packages, half-pound size" (R. 9). The witness further stated that the ½-pound packages (plaintiffs' illustrative exhibit 1) also are marked with the country of origin and the weight of the package and are "sold to the customer in that fashion" (R. 10).

The question as to what constitutes the "immediate container" of merchandise for tariff purposes has been previously passed upon by this and our appellate court. In the case of *United States* v. *E. F.*

*Morley & Co. et al.*, 18 C.C.P.A. (Customs) 388, T.D. 44639, the merchandise consisted of kippered herring in quantities varying from 2 to 6 pounds, loosely placed in unsealed cellophane wrappers. The record further disclosed that a considerable number of such cellophane wrappers, with their contents, were, in turn, placed in a wooden box which, together with its contents, weighed more than 15 pounds; that the weight of the fish in any of the cellophane wrappers was less than 15 pounds; that the contents of each of the cellophane wrappers varied in weight; and that upon the cellophane wrappers enclosing the fish there was a tag or label showing the country of origin. The fish involved in the *Morley* case, *supra*, were assessed with duty under paragraph 720 of the Tariff Act of 1922 as fish in immediate containers "weighing with their contents not more than fifteen pounds each," the cellophane wrappers being considered for classification purposes the "immediate" containers of the merchandise. Our appellate court upheld the action of this court in sustaining the importers' protest that the fish there in question were dutiable under said paragraph 720, *supra*, as fish in immediate containers weighing with their contents more than 15 pounds each. In holding in effect that the cellophane wrappers were not the immediate containers, the appellate court, in the *Morley* case, *supra*, at pages 390–391, stated:

We are clear, from an inspection of the samples before us, that the cellophane wrappers in which two or three or more fish are placed are not "immediate containers" within the meaning of those words as used in said paragraph 720. They do not serve the ordinary purposes of a container; they are loose and unsealed. The fish around which they are wrapped are not of uniform weight. They could not ordinarily be carried away by a retail purchaser without being first inclosed in some other wrapper. It would appear that the use of the wrapper is primarily for sanitary purposes, as wax paper is often loosely wrapped around certain perishable foods.

We think the case at bar is clearly distinguishable from the line of tea cases relied upon by the Government in its brief and upon oral argument.

The case of *Wright & Graham Co. v. United States*, 5 Ct. Cust. Appls. 453, T.D. 34976, describes the character of the wrappings or coverings involved in that line of cases. We quote from the opinion in the case above cited:

* * * The immediate containers, holders, or coverings of the tea were either sheet lead, cardboard boxes, or boxes with cardboard sides and tin tops and bottoms. * * *

\* \* \* \* \* \* \*

As we have said, the immediate containers or coverings involved in this case have a capacity of, or in fact contain, from 1½ to 4 ounces of tea each. They are not expensive, are not especially durable or substantial in their construction, and after the contents have been consumed are of no value as articles of merchandise, although *the boxes may have some further use as containers.* [Italics ours.]

We do not think these cellophane wrappers loosely wrapping fish are at all comparable to the containers involved in the tea cases.

It is not practical to lay down a hard and fast rule by which it may be determined what is or is not an "immediate container." Many cases must be determined by the particular facts in those cases, without regard to any technical definition, and the case at bar is one of this character. [Italics quoted.]

In *Hudson Shipping Co., Inc.* v. *United States*, 40 Cust. Ct. 48, C.D. 1957, certain frozen red snappers, classified under paragraph 720(b) of the Tariff Act of 1930, as modified, at the rate of 12½ per centum ad valorem as fish, prepared or preserved, in immediate containers weighing with their contents not more than 15 pounds each, were claimed to be properly classifiable at the rate of 1 cent per pound as fish, prepared or preserved, not specially provided for, in bulk or in immediate containers weighing with their contents more than 15 pounds each. In holding that the "immediate container" of the frozen red snappers was the cardboard container in which the cellophane wrappers with their contents were placed, and thus sustaining the importer's protest, this court, in the *Hudson Shipping* case, *supra*, at page 50, observed:

The undisputed evidence in this case shows that the imported fish were loosely wrapped in cellophane sheets (R. 9), after which they were packed in large corrugated cartons, ranging in size from 2 to 4 pounds (R. 6) ; that each cardboard carton with its contents weighed about 50 pounds and contained markings as to the nature of the merchandise, the country of origin, and the company for whom imported. It further appears that the involved snappers contained in each carton were imported in odd weights, averaging in size from 3, 5, and 7 pounds each (R. 6–7). Fish such as those here imported are sold to wholesalers, in carton quantity, according to the marked weights on each carton. The fish are sold by the wholesaler to his customers in quantities by weight, the testimony indicating that "If a customer wants 10, 15, or 20 pounds, he takes out several fish, throws them on the scale, and takes off the cellophane paper" (R. 12).

Referring further to the question of "immediate container" with respect to the merchandise there involved, we further stated, in the *Hudson Shipping* case, *supra*, at pages 51–52:

In *H. Horsfield* v. *United States*, 26 Treas. Dec. 814, Abstract 35593, the merchandise consisted of dead chickens, packed in a wooden box, which were assessed for duty under paragraph 229 of the Tariff Act of 1913 under the provision therein for poultry, dead or prepared in any manner, "including the weight of the immediate coverings or containers." The only question raised was whether the wooden boxes should have been included in the weight of the commodity. The record disclosed that a sort of parchment or oilpaper was placed around the chickens inside the boxes, covering them with about two thicknesses to keep the flesh from the wood and from exposure, it appearing that the box was not a tight box, but one put together in a rather loose way, being sufficient to contain and protect the poultry which, it was indicated, was brought in in a frozen condition. The protest of the importer that the dutiable weight should have been the weight of the poultry, including the weight of the paper but excluding the weight of the wooden boxes, was sustained.

In the *Horsfield* case, *supra*, the record disclosed that the outer container or wooden box was put together "in a rather loose way" and was not of tight construction, being merely sufficient to contain and protect the poultry. The

inner covering for the poultry there in question was, however, sufficiently thick and substantial to keep the flesh of the poultry from the wood and from exposure. In the case at bar, the record discloses that the snappers in question are loosely wrapped in cellophane sheets and then packed in large corrugated boxes, apparently of substantial construction. "Containers" or "coverings," in our opinion, connote some idea of permanency, and "immediate," as heretofore indicated in the *Vantine & Co.* case, *supra* [20 Treas. Dec. 863, Abstract 25478], is a relative term. The determination as to what constitutes the "immediate container" of merchandise must be governed by the facts in each case. We are of opinion that the record in the case at bar supports a finding that the immediate container of the fish here involved is the large corrugated carton in which the merchandise was imported.

In our opinion, the cellophane wrappers in which the fish here imported are contained constitute the "immediate containers" of the merchandise. The facts in the present case are clearly distinguishable from those that obtained in the *Morley & Co.* and *Hudson Shipping Co.* cases, *supra*, and call for a different conclusion than that reached by the court in those cases. There, the record disclosed that the fish were loosely wrapped in cellophane wrappers. In both cases, the fish around which the wrappings were placed were not of uniform weight, and it further appears that the merchandise could not ordinarily be taken away by a purchaser unless rewrapped in another suitable container. Thus, the wrappings there in question did not "serve the ordinary purposes of a container" (*Morley & Co.* case, *supra*). In the case at bar, however, the record and the exhibit in evidence (plaintiffs' illustrative exhibit 1) indicate that the cellophane wrappers, marked to indicate the country of origin, contain exactly one-half of 1 pound of dried, salted fish. Each wrapper is securely tied with a string. It further appears that these cellophane wrappers are priced and placed in baskets put on display in the stores wherein they are offered for sale and that the fish are sold in the ½-pound packages. The fact that, after sale, the fish in this case are placed in a paper bag when carried away by the customer is not, in our opinion, pertinent in our present determination. Such "rewrapping" is merely for the convenience of the customer in transportation. Unlike the wrappings involved in the *Morley & Co.* and the *Hudson Shipping Co.* cases, *supra*, the cellophane wrappers here under consideration do "serve the ordinary purposes of a container."

In support of their claim herein, plaintiffs, in their brief, direct our attention to the case of *United States* v. *Yamashita*, 1 Ct. Cust. Appls. 341, T.D. 31435, wherein the court held that certain dried fish, packed in 1-pound packages, sealed and ready for sale, and then packed in wooden packing boxes or cases of more than ½-barrel capacity, were not dutiable under paragraph 258 of the Tariff Act of 1897 as fish in packages containing less than one-half of 1 barrel. The construction of "immediate containers," as referred to in paragraph 719(5), *supra*, was not there involved or passed upon by the court in the cited

case. Accordingly, the holding in that case is not pertinent to our present inquiry.

On the basis of the record here presented, we are of the opinion and hold that the imported fish are properly classifiable under paragraph 719 (5) of the Tariff Act of 1930 at the rate of 25 per centum ad valorem as fish, in immediate containers (not airtight) weighing with their contents not more than 15 pounds each. The protest in this case is overruled.

Judgment will be entered accordingly.