(C.D. 2327)

AMENDE-SCHULTZ ET AL. *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 3, 1962)

*Lawrence & Tuttle* (*Edward N. Glad* of counsel) for the plaintiffs.
*William H. Orrick, Jr.*, Assistant Attorney General (*Morris Braverman*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges; MOLLISON, J., dissenting

WILSON, Judge: These cases involve the classification of certain merchandise described on the invoices as "Frozen Skinless, Boneless

Cod Fillet Slabs." The importation was assessed for duty at 2½ cents per pound under paragraph 717(b) of the Tariff Act of 1930 as "Fish, fresh or frozen * * * filleted, skinned, boned, sliced, or divided into portions, not specially provided for." The importer challenges the correctness of the classification and duty assessment and contends that the involved merchandise is identical to the fish product under consideration in the case of *The Lee Herrmann Co., a/c The Coldwater Seafood Corp.* v. *United States*, 43 Cust. Ct. 49, C.D. 2101. In the *Lee Herrmann Co.* case, the court held the merchandise dutiable at 1 cent per pound under paragraph 720(b) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, as "Fish, prepared or preserved, not specially provided for: * * * In bulk or in immediate containers, weighing with their contents more than fifteen pounds each." The record in the *Lee Herrmann Co.* case, *supra*, was incorporated in the present case.

The record in the instant case is brief. The plaintiffs called one witness and the defendant rested without the introduction of testimony. Plaintiff's witness Edward H. Schultz, testified that, at the time of the trial, he was a food broker and importer, specifically of seafood, under the firm name of Amende-Schultz; that he had been with that firm since 1955 and, prior thereto, between 1946 and 1955, was associated with Rainke & Amende. He stated that the latter firm handled merchandise of the type here involved for the Coldwater Seafood Corp. The witness, in substance, further testified as follows: He had seen merchandise which was imported by Coldwater Seafood Corp. under the name of "codfish blocks" and was also familiar with codfish fillets, which were sold and used as fillets. In explaining the difference between fillets and codfish blocks, he stated, "one is a block or slab, that is used for further processing into fishsticks or portions. It is never sold to the public in the imported form. The other is sold either to restaurants or retail housewives in its original form" (R. 4); that fillets are more expensive than blocks and slabs; that the blocks and slabs were invoiced at 16 cents per pound in Los Angeles, and the fillets from 18 to 22 cents per pound. Mr. Schultz stated that he had seen merchandise such as the slabs now under consideration processed; that the merchandise was not sold to customers in the form in which it was imported but was always processed further as follows:

It is placed on a band saw and cut up into equal portions, that are further breaded or sold raw, but generally breaded for fishsticks. Some is cut. In the particular instance of this merchandise, most of it was cut into sticks of equal portions, breaded, and then cooked.

Describing the type of fish that were placed in the imported slabs, plaintiffs' witness stated that they were made up of "fillets, generally

untrimmed fillets of cod with pieces, and trimmings also placed in the block" (R. 5).

Plaintiffs' witness also stated that he had read the record in the *Lee Herrmann Co.* case, C.D. 2101, *supra*; that he had seen fish blocks of the type described in that record; and that he had handled such merchandise in 12-pound blocks, but not in the 22½-pound size. He further stated that the 12-pound blocks such as those described in the record in C.D. 2101, *supra*, and the slabs involved in the present case were the same in physical makeup.

Describing the manner in which the merchandise now before us was packed by the exporter, Mr. Schultz testified:

There were a number of these slabs, or blocks as we customarily call them— in this case it is a block because of the physical dimensions, placed in a polyethylene bag, and placed in a master carton containing approximately 50 pounds. [R. 7.]

In this connection, the witness testified that the polyethylene bag in which the fish block was placed was not marked with the country of origin, but that the carton itself was so marked, as "Product of Japan."

Concerning the use of the imported merchandise, Mr. Schultz testified:

Q. Have you ever heard of the merchandise involved herein being used as fillets by themselves?—A. No.

Q. Have you ever tried to use them as fillets by themselves?—A. Yes.

Q. What happened?—A. They were rejected by the potential users because they contain pieces and poorly trimmed fillets, principally because they contained pieces or scraps of fillets. [R. 11.]

On cross-examination, Mr. Schultz emphasized that there were no markings whatsoever on the polyethylene bags. He stated that he had imported codfish blocks from Japan approximately twice the size of the slabs in the present case. "The block is just cut in two." (R. 12.) It further appeared that the merchandise in the *Lee Herrmann Co.* case, *supra*, was compressed into rectangular blocks and that while similar pressure was exerted on the imported slabs and they were similarly prepared, the slabs at bar were not rectangular in shape. The witness admitted that there were some whole fillets in the slabs.

The plaintiffs, in this case, rely upon the foregoing testimony, together with the record in the *Lee Herrmann Co.* case, *supra*. The Government, on the other hand, contends that the *Lee Herrmann Co.* case, *supra*, has no application to the present facts and objected to its incorporation in the record upon the following grounds:

1. That the instant merchandise was imported from Japan while the product in the incorporated case came from Iceland.

2. That there is nothing in the record to show that the method of manufacture was the same in both cases.

3. That the merchandise in the instant case was invoiced as slabs, while in the incorporated case it was invoiced as blocks.

4. That there is a difference in the size and shape of the individual units of merchandise involved in the two cases. In its brief, the Government, in addition to the objections urged at the trial, points out that the slabs in the present case are packed in polyethylene bags, while no such testimony is given in the incorporated case, and contends, further, that the incorporation of the latter record is improper because the parties are not the same. Defendant cites the case of *Chong Kee Jan Co.* and *Joseph A. Paredes* v. *United States*, 45 Cust. Ct. 138, C.D. 2213, as controlling in the instant case.

The court is convinced that the merchandise in the present case is in all material respects similar to that involved in the *Lee Herrmann Co.* case, *supra*. There appears to be no sound reason for holding, because one importation came from Iceland and the other from Japan, that the incorporated record is not pertinent. The testimony shows that the merchandise in both cases consisted of frozen, compressed fish, designated in one instance as "blocks" and in the present case as "slabs." It was prepared in the same manner and consisted of substantially the same type of fish. In the present case, as in the incorporated case, the merchandise cannot be sold for fillets, but must be cut up into fish sticks or portions before sale, while fillets may be readily separated and sold individually. However, in the blocks and slabs, the pressure exerted on the meat causes an intertwining of the flesh in such manner that it cannot be separated into individual pieces, but must be sawed into slices.

The question which must be resolved in this case, as it was in the *Lee Herrmann Co.* case, *supra*, is, what was the immediate container of the imported frozen fish? This, of course, is fundamentally important, because fish in immediate containers weighing under 15 pounds per unit are, under the tariff act, dutiable at a higher rate than fish where the immediate container and contents weigh more than 15 pounds. If we assume, therefore, that the importation consisted of "Fish, prepared or preserved, not specially provided for," should the importation properly be classified as being "In bulk or in immediate containers, weighing with their contents more than fifteen pounds each" and assessed at 1 cent per pound?

The question of what constitutes an immediate container has been before the court on a number of occasions. In *The Lee Herrmann Co., a/c The Coldwater Seafood Corp.* case, the record showed that the merchandise was described on the invoices as "haddock blocks" and "cod blocks," some weighing 12 pounds each and others of a 22½-

pound size. These blocks had no individual wrapper, but were packed in corrugated paper containers. The 12-pound blocks were packed 5 to each container, and the 22½-pound blocks 3 units to each container. The court, in the *Lee Herrmann Co.* case, *supra*, followed the holding in the case of *Iceland Products, Inc., and D. J. Ambrosio v. United States*, 38 Cust. Ct. 526, Abstract 60817. In the *Iceland Products, Inc.*, case, *supra*, each block was wrapped in parchment paper after it had been compressed and frozen in stainless steel molds. Each individual block packed in parchment paper was put into a quickfreeze solution and glazed over. After this quickfreeze glaze bath, 8 of the individual blocks of 7 pounds each were packed in a large case. The court, in the *Iceland Products, Inc.*, case, *supra*, held the merchandise there involved properly classifiable under paragraph 720(b) of the tariff act, as modified, at the rate of 1 cent per pound as "Fish, prepared or preserved, not specially provided for: * * * In bulk or in immediate containers, weighing with their contents more than fifteen pounds each," as claimed, holding, in effect, the immediate containers of the merchandise to be the large case containing the individual units.

In the *Chong Kee Jan Co.* case, *supra*, the imported product consisted of small ½-pound packages of dried, salted fish, wrapped in cellophane containers (not airtight), which were then packed in a large cardboard box or wooden container. The only evidence in the case indicated that the imported fish were packed in cellophane bags, which were sometimes sealed or stapled together, or tied with a string. Several of the individual cellophane bags with contents were packed in large cardboard or wooden boxes, each large box containing 60 individual packages of ½ pound each. On the master box were printed certain Chinese characters, describing the type of fish and the size and number of ½-pound packages contained in the box. On the large containers were also certain identifying numbers and markings used by the importer, as well as the name of the packer, and certain markings to indicate the country of origin, which was Hong Kong. The testimony indicated that the fish were displayed for sale in the small cellophane packages and were sold in the ½-pound packages. It further appeared that the small cellophane packages were marked with the country of origin and the weight of the package and were sold to the customer as thus marked. The court, in the *Chong Kee Jan Co.* case, *supra*, held the merchandise there involved properly dutiable under paragraph 719(5) of the Tariff Act of 1930 at 25 per centum ad valorem, as fish, in immediate containers weighing with their contents not more than 15 pounds each, as assessed. In reaching the conclusion that the cellophane wrappers there involved were the "immediate containers," the court therein distinguished, *inter alia*, the cases of *United States v. E. F. Morley & Co. et al.*, 18 C.C.P.A.

(Customs) 388, T.D. 44639, and *Hudson Shipping Co., Inc.* v. *United States*, 40 Cust. Ct. 48, C.D. 1957.

In the *Morley* case, *supra*, the merchandise consisted of kippered herring, loosely placed in unsealed cellophane wrappers, which contained from 2 to 6 pounds each. A considerable number of these wrappers, with contents, were placed in a wooden box which, with its contents, weighed more than 15 pounds. The fish in any individual cellophane wrapper weighed less than 15 pounds. On each of the cellophane wrappers was a tag or label showing the country of origin. The assessment was levied on the theory that the individual wrappers were the immediate containers and that each weighed less than 15 pounds. This court sustained a claim by the importer that the immediate containers were the larger boxes, each of which contained more than 15 pounds. This opinion was affirmed by the Court of Customs and Patent Appeals which held as follows:

> We are clear, from an inspection of the samples before us, that the cellophane wrappers in which two or three or more fish are placed are not "immediate containers" within the meaning of those words as used in said paragraph 720. They do not serve the ordinary purposes of a container; they are loose and unsealed. The fish around which they are wrapped are not of uniform weight. They could not ordinarily be carried away by a retail purchaser without being first inclosed in some other wrapper. It would appear that the use of the wrapper is primarily for sanitary purposes, as wax paper is often loosely wrapped around certain perishable foods.
>
> We think the case at bar is clearly distinguishable from the line of tea cases relied upon by the Government in its brief and upon oral argument.

In the case of *H. Horsfield* v. *United States*, 26 Treas. Dec. 814, Abstract 35593, the imported merchandise consisted of dead chickens, packed in wooden boxes. Duty was assessed under paragraph 229 of the Tariff Act of 1913, providing for poultry, dead or prepared in any manner, including the weight of the immediate coverings or containers. The evidence in the case showed that a sort of parchment or oilpaper was placed around the chickens inside each box, covering them with two thicknesses to keep the flesh from the wood and exposure. It appears that the box was not a substantially built one, but was put together in rather a loose way. The court held the immediate container to be the wrapping around the poultry inside the box and that the weight of the large box should be excluded in determining the amount of duty.

In commenting on the meaning of containers or coverings the court, in the *Hudson Shipping Co., Inc.*, case, C.D. 1957, *supra*, stated:

> * * * "Containers" or "coverings," in our opinion, connote some idea of permanency, and "immediate," as heretofore indicated in the *Vantine & Co.* case, *supra* [20 Treas. Dec. 863, Abstract 25478], is a relative term. The determination as to what constitutes the "immediate container" of merchandise must be governed by the facts in each case.

In our opinion, the record in the *Lee Herrmann Co.* case, *supra*, was properly incorporated herein, and the holding in that case is applicable and controlling in the determination of the present issue.

For the reasons hereinbefore set forth, we hold the involved merchandise properly dutiable under paragraph 720(b) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, at the rate of 1 cent per pound under the provision therein for "Fish, prepared or preserved, not specially provided for: * * * In bulk or in immediate containers, weighing with their contents more than fifteen pounds each," as claimed.

The protests are sustained. Judgment will be entered accordingly.

### DISSENTING OPINION

MOLLISON, Judge: I dissent from the opinion and judgment of my colleagues for the reason that I am of the opinion that the record in this case is insufficient upon which a finding that the cartons, holding approximately 50 pounds each, were the "immediate containers" of the fish in issue.

There were, according to the record, a number of slabs of frozen fish, each slab wrapped or contained in a polyethylene bag, in each carton. The record is vague to the point of being silent on the question of the weight of each slab, and nothing appears in the record as to whether the polyethylene bag had any function in the sale, use, or handling of the fish.

The plaintiffs, seeking classification under a tariff enumeration providing for different rates upon fish "in immediate containers," based upon the weight of the fish and the immediate containers, had the burden of establishing such facts as would enable the court to determine whether the polyethylene bags or the cartons were the immediate containers of the fish within the meaning of the term "immediate containers," as used in paragraph 720(b), as modified. I do not believe that such facts are in this record, and, since the *Herrmann* case, the record in which was incorporated herein, related to fish that had no coverings on each block of fish, the record in that case could not supply the evidentiary deficiency in this case.