(C.D. 2340)

C. J. Tower & Sons of Nia., Inc. v. United States

United States Customs Court, First Division

(Decided May 14, 1962)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*William H. Orrick, Jr.*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

Before OLIVER and WILSON, Judges

WILSON, Judge: The plaintiff in this action contests the classification of certain merchandise exported from Canada in February 1960. On the invoices, the importations are described as "Block Frozen Skinless Mullet Fillets" and "Block Frozen Skinless Whitefish fillets," with the notation at the bottom of the invoices "To be processed and used in the manufacture of Gefilte Fish." It was stipulated between the parties in open court that "the merchandise was in immediate containers weighing with their contents more than fifteen pounds each" (R. 2). As imported, the fish was in a frozen condition in ice blocks.

The merchandise was classified by the collector as "Fish, fresh or frozen (whether or not packed in ice), filleted, skinned, boned, sliced, or divided into portions, not specially provided for," and was assessed at 1½ cents per pound under paragraph 717(b) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802. The importer claims the merchandise is properly dutiable at 1 cent per pound, net weight, under paragraph 720(b) of the tariff act, as modified, *supra*, as "Fish, prepared or preserved, not specially provided for: * * * In bulk or in immediate containers weighing with their contents more than fifteen pounds each."

Since the parties have agreed that the fish in their immediate containers weigh over 15 pounds each, the only question for determination

231

is whether the imported merchandise was properly classified as "filleted, skinned, boned, sliced, or divided into portions, not specially provided for."

The plaintiff contends that the classification of the merchandise is controlled by the cases of the *Iceland Products, Inc., and D. J. Ambrosio* v. *United States*, 38 Cust. Ct. 526, Abstract 60817, and *The Lee Herrmann Co., a/c The Coldwater Seafood Corp.* v. *United States*, 43 Cust. Ct. 49, C.D. 2101. Since the plaintiff's brief was written, the case of *Amende-Schultz et al.* v. *United States* (protests 59/9547 and 59/9553) has been decided on April 3, 1962, 48 Cust. Ct. 142, C.D. 2327. This case follows the *Iceland Products* and *Lee Herrmann* cases, *supra*.

There is really no substantial conflict in the testimony in this case. Plaintiff called two witnesses, Willison Slimmon of Winnipeg, Canada, director of the Canadian Fish Producers, Ltd., of Winnipeg, exporter of the merchandise, and Bernard Goodwin, vice president of Mother's Food Products, Inc., importer of the fish in question. Mr. Slimmon testified, in substance, that he was familiar with the manner in which the frozen fish blocks in question were produced, which he described as follows:

We receive the fish from the fishermen in the dressed form; that is, they've been eviscerated. The fish are taken to the cutting table, and they're cut into pieces—that is, they're split down the back—and from there they're taken to fish-skinning machines, where they're skinned. The flesh is then put into trays—two blocks to a tray, approximately twenty pounds—where they are freshly frozen in a freezer. This forms a block of fish. [R. 6.]

In connection with this witness' testimony, plaintiff's illustrative exhibit 1 was introduced. It consists of a rectangular block of frozen fish. Its dimensions are about 19 by 10 by 2 inches. In describing plaintiff's illustrative exhibit 1, Mr. Slimmon said:

Exhibit 1, we are allowed to produce a block of fish, with the approval of our buyers, from untrimmed fillets, and bits and pieces which are culled from our processing of our one-pound packages which have to have a trimmed, tailored piece of fish suitable for a housewife to keep in her own kitchen. The appearance doesn't resemble one another. [R. 26.]

Mr. Slimmon's evidence establishes definitely, and this testimony is not controverted, that the fish blocks are composed of untrimmed fillets and miscellaneous pieces and trimmings from fish; that they are compressed together under pressure into a mass. In this condition, they are frozen into blocks, as shown in plaintiff's illustrative exhibit 1.

A visual examination of plaintiff's illustrative exhibit 1 indicates that the merchandise in the exhibit really is a mass of compressed fish with no individual fillets evident. Furthermore, the use made of the fish blocks shows that such merchandise is not sold in the manner in which fillets are marketed, but that the fish blocks are thawed out, ground, and mixed with other ingredients before being

cooked and sold as "Gefilte Fish." Mr. Goodwin's testimony, in effect, establishes that the merchandise in question is received in frozen blocks, as exported, and that they are processed by thawing, grinding, adding additional ingredients, and cooking before being offered to the trade.

The Government offered in evidence defendant's collective exhibit A and called one witness, Edward Freibrun, a customs examiner at the port of New York, who, during the years 1958, 1959, and the fore part of 1960, was examiner of fish. The gist of Mr. Freibrun's testimony was that he had been to the factory of Mother's Food Products, Inc., in Newark where he "saw some thawed-out blocks of fillets, and bits, pieces. I witnessed the weighing of them, the grinding, the preparation of such fillets, pieces, and bits." (R. 56.) Mr. Freibrun described the fish blocks he saw as "Fillets, pieces, and bits, frozen in block form." (R. 57.) He further stated that, at his request, one fish block was thawed out and that he saw "after it was thawed out, you had fillets, pieces, and bits of fish." (R. 58.) He testified, however, that some of the fillets were distinguishable as fillets. There is, therefore, no essential conflict between the testimony of Mr. Freibrun and the plaintiff's witnesses, since the Government witness went on to say that the fillets in plaintiff's illustrative exhibit 1 were untrimmed.

The Government, in its brief, stresses the fact that the commercial invoices describe the imported fish as "Fillets" or "fillets." It is contended that that is an important admission against interest and that there is nothing in the testimony to overcome what the defendant claims is a *prima facie* case supporting the classification. In support of its position, the defendant cites, in its brief, the case of *United States* v. *Mercantil Distribuidora, S.A., Joseph H. Brown*, 43 C.C.P.A. (Customs) 111, C.A.D. 617. However, an analysis of this case and its application to the facts in the case at bar indicates, in our opinion, that it is in no sense controlling in the determination of the present issue. In the *Mercantil* case, *supra*, the court stated, page 116:

Another aspect of the case is the fact that the goods involved here were invoiced as "cured beef," and in addition were frequently so described in correspondence and other documents by importers or their agents, exporters, sellers and purchasers. Although appellant in its assignments of error states that these statements "conclusively" established that the goods were cured beef, it has retreated from that position somewhat in its brief, and argues that they were admissible as admissions against interest, and that they would have established a *prima facie* case against importers. That is undoubtedly a correct statement of the law, but it is of little help here. It is not disputed that the statements were admissible for whatever they are worth, and the time when a *prima facie* showing would have sufficed has long since passed. It was testified by importers' witnesses that meat of the character involved here was referred to as "cured beef" solely to conform to the BAI

usage of that term, and such usage did not indicate what the parties thought the merchandise was in either the ordinary or the tariff usage. The lower court held that such explanation was sufficient to overcome Government's *prima facie* showing, and that importers were not precluded from showing what the merchandise really was. In the holding the court was clearly correct. *United States* v. *Paul Puttmann*, 21 C.C.P.A. (Customs) 135, T.D. 46466; *United States* v. *Wo Kee & Co.*, 21 C.C.PA. (Customs) 341, T.D. 46880; *United States* v. *Rotberg & Krieger*, 24 C.C.P.A. (Customs) 441, T.D. 48902.

In the instant case, the evidence very preponderantly establishes the fact that the imported merchandise consisted of fish blocks, made up of untrimmed fillets and miscellaneous pieces of fish, compressed and frozen together in a mass, and that such merchandise was never intended to be sold as fillets, but to be further processed into "Gefilte Fish." Whatever tenuous weight might be given to the statements on the invoices is abundantly overcome by the evidence as to what the merchandise actually consisted of.

We are of the opinion and hold that the merchandise herein is controlled by the decisions in the cases of *Iceland Products, Inc., and D. J. Ambrosio* v. *United States*, 38 Cust. Ct. 526, Abstract 60817; *The Lee Herrmann Co., a/c The Coldwater Seafood Corp.* v. *United States*, 43 Cust. Ct. 49, C.D. 2101; and *Amende-Schultz et al.* v. *United States*, decided April 3, 1962 (48 Cust. Ct. 142, C.D. 2327). Accordingly, we hold the merchandise in question properly dutiable at the rate of 1 cent per pound, net weight, under paragraph 720(b) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, as "Fish, prepared or preserved, not specially provided for: * * * In bulk or immediate containers weighing with their contents more than fifteen pounds each," as claimed.

The protest is sustained. Judgment will be entered accordingly.